# MARY C. WILLIAMS

*v.*

# HIRAM L. HUGUNIN.

1. MARRIED WOMAN—*on what contracts is her separate estate liable.* To render the separate estate of a married woman liable in this State, the debt must have been contracted by her in reference to it, or for her own benefit on the credit of her separate property, or by some appropriate instrument executed by her with a view to make the debt a specific charge upon it. A general engagement to pay a debt, contracted by a single bill or note, having no reference to her separate property, will create no such charge upon it as can be enforced in a court of equity.

2. Where the husband executed his promissory note to his creditor, and his wife indorsed the same, in payment of his individual indebtedness, and it was silent as to the separate estate of the wife, or of any intention to make its payment a charge upon such separate estate, it-was *held,* that it could not be construed into a contract to pay it out of her estate, and that it could not be enforced against her estate in a court of equity.

3. SAME—*act of 1861 has not conferred the right to contract generally.* Under the Married Woman's act of 1861, the common law disability of a *feme covert* to contract is not changed, except so far as the power to contract is a necessary incident to the right to hold and enjoy her separate property, and her capacity to make contracts respecting her separate property is an implication of law, and not of equity, and consequently all contracts made by her within the scope of that legal capacity, are legal contracts and cognizable in the courts of law.

4. SAME—*doctrine of the English cases making her contracts an equitable charge, not applicable in this State.* The separate estates of *femes covert,* under our laws, not being the creatures of equity, but being legal estates, the reasons upon which the doctrine of the English cases subjecting the separate estates of married women to the payment of debts contracted by them, are not applicable in this State.

Appeal from the Superior Court of Cook county; the Hon. Joseph E. Gary, Judge, presiding.

This was a bill in equity, by Hiram L. Hugunin against Mary C. Williams, to subject her separate estate to the payment of a note of her husband, which she had indorsed. The opinion of the court states the facts of the case.

Messrs. Page & Plum, for the appellant.

Mr. E. A. Otis, for the appellee.

Mr. Justice Scott delivered the opinion of the Court:

This bill was to subject the separate estate of a married woman to the payment of a debt which, it is alleged, was, by implication, charged upon it.

It is alleged, in substance, the husband of appellant executed the note in controversy, payable to the order of appellee, upon which appellant indorsed her name before its delivery; that she had separate property over which she exercised the powers of a *feme sole;* that the note was executed and indorsed with the intention of charging it upon such separate estate. Appellant admits she has separate property; that she indorsed the note substantially as charged, but denies that her separate estate received the benefit of the consideration, and alleges it was done solely to secure the indebtedness of her husband; hence, she insists, it was of no legal or binding effect on her or her property. The evidence shows appellant was merely indorser for her husband; that she never received any part of the consideration for which the note was given, nor was it given in relation to or for the benefit of her separate estate. It is not claimed she expressed any intention to charge her separate estate with the payment of the indebtedness of her husband by any act other than indorsing the note itself.

It is insisted the indorsement or guaranty of the note by appellant, without any other act on her part expressing an

intention so to do, charged her separate property with its payment. This exact question has not heretofore been passed upon by this court.

The English cases most generally follow the doctrine in the case of *Hulme* v. *Tennant*, 1 White's Leading Cases in Equity, 324. That was a bill brought by the obligee on the joint bond of the husband and wife, to enforce payment out of the separate property of the wife. Her separate property was held liable on the principle stated by the Chancellor, that "if a court of equity says a *feme covert* may have a separate estate, the court will bind her to the whole extent as to making that estate liable to her own engagements, as, for instance, the payment of debts, etc." The case rested on the doctrine that a *feme covert*, acting with respect of her separate property, is competent to act in all respects as if she was *feme sole*, and that rule was said to be necessary to support the decisions on this subject.

The rule adopted in that case was substantially followed in *Murray* v. *Bonlee*, 3 Myl. & K. 209, and in *Owens* v. *Dickinson*, Craig & Phillips, 58, but the conclusion was reached upon a somewhat different process of reasoning, and the relief decreed placed on different grounds.

In *Murray* v. *Bonlee*, *supra*, the foundation of this doctrine was said to be this: "The wife has a separate estate subject to her own control and exempt from all other interference or authority. If she can not affect it, no one can, and the very object of the settlement which vests it in her exclusively is, to enable her to deal with it as if she were discovert. At first, the court seems to have supposed that nothing could touch it but some real charge, as a mortgage, or an instrument amounting to an execution of a power, where that view was supported by the nature of the settlement. But afterwards her intention was more regarded, and the court only required to be satisfied that she intended to deal with her separate property." Thus, if she only executed a bond or made a note, or accepted a bill, because these acts would have been nuga-

tory if done by a *feme covert* without any reference to her separate estate, it was held that she must have designed a charge on that estate, since in no other way could the instrument made by her have any validity or operation.

In *Owens* v. *Dickinson, supra,* relief was granted on the principle that the separate property of a married woman being the creature of equity, if she has the power to deal with it, she has the other power incident to property generally, viz: to contract debts to be paid out of it; and inasmuch as her creditors have not the means at law of compelling payment of those debts, a court of equity takes upon itself to give effect to them, not as personal liabilities, but by laying hold of the separate property as the only means by which they can be satisfied.

The difficulty of obtaining a satisfactory reason for the rule may be seen in the language used by the Chancellor where he says, "it is quite clear there is nothing in such a transaction which has any resemblance to the execution of a power. What it is, it is not easy to define. It has sometimes been treated as a disposing of a particular estate, but the contract is silent as to the separate estate, for a promissory note is merely a contract to pay, not saying out of what it is to be paid, or by what means it is to be paid, and it is not correct, according to legal principles, to say that a contract to pay is to be construed into a contract to pay out of a particular property, so as to constitute a lien on that property."

All the authorities, however, seem to concur in holding there must be an intention manifested to charge the separate estate, otherwise the debt will not affect it.

Mr. Story says, the difficulty has always been, to ascertain what circumstances, in the absence of any positive expression of intention, will be sufficient to create a charge on her separate estate, or what sufficient to demonstrate an intention to create a general debt. He states the rule as follows: "The fact that the debt has been contracted during coverture, either as principal or surety, for herself or her husband, or jointly

with him, seems ordinarily to be held *prima facie* evidence to charge her separate estate without any proof of a positive agreement or intention so to do." 2 Story Eq. Jur. sec. 1400.

The rule, no doubt, had its origin more in a desire to do justice than in any satisfactory reasoning. The principle, as stated in all the text books, and which lies at the foundation of the decisions adopting the rule, is, that such securities executed by a married woman must be supposed to have been made with the intention that they should operate in some way, and no effect could be given to them except as against her separate estate. Hill on Trustees, 424; 2 Story Eq. Jur. sec. 1400.

The courts in many of the States have followed the doctrine of the English cases, but others, of equal respectability and authority, have held that a debt contracted by a married woman for the accommodation of another person, without consideration received by her, will not be enforced in equity against her separate property unless made a specific charge upon it by an express instrument. The authorities showing departure from the English cases are very fully collated in *Hare & Wallace's Notes to Hulme* v. *Tennant, supra.*

Without entering upon any extended consideration of the conflicting decisions bearing on this question, we think the doctrine of the latter class of cases is more in harmony with our previous decisions on analogous questions, and with the policy of our laws.

At common law, a married woman could not enter into general engagements to pay money that would be personally binding on her; and, in *Carpenter* v. *Mitchell*, 50 Ill. 470, it was held our statute of 1861 had not changed the rule except the power to make contracts such as might be considered necessarily incident to the right to hold and enjoy her separate property.

In *Cookson* v. *Toole*, 59 Ill. 515, it was held, the implication of capacity in a married woman to contract in respect to her separate property, arising under the statute, is an implication

of law, and not of equity, and therefore all contracts made within the scope of that legal capacity are legal contracts, and cognizable in the courts at law.

The rule deducible from these cases is, that the only contracts of a married woman that can be enforced against her are such as relate to her separate estate as necessarily incident to its enjoyment. This conclusion would seem to follow as a corollary from the doctrine of those cases.

The reasoning in the case of *Carpenter* v. *Mitchell, supra,* is against the right to make contracts, which belongs to a *feme sole,* and declares that power is not given to a married woman by the express language of the law of 1861, nor by its implications. It was said, the legislature had not seen fit to confer upon them any such power. and this court would be going beyond the proper limits of its authority to seek to give it by any forced construction of the statute.

The separate estates of *femes covert* under our laws are not mere creatures of equity, but are legal estates, and hence the reasoning that lies at the foundation of the English cases can not apply. The principle first announced was, that the execution of a bond, bill or note by a married woman was itself construed into an act to charge her separate property with its payment. This ground of liability was subsequently declared to be untenable, and the liability was placed on the principle that equity will seize the separate estate of a *feme covert* and appropriate it to the payment of her debts, no matter how contracted, whether by written or parol engagements. Under our laws, she may contract in reference to her separate property the same as a *feme sole,* and this fact excludes the idea she may contract in any other manner, and especially where the separate estate is a legal, and not simply an equitable, one. The mere fact a *feme sole* contracts indebtedness in writing or by verbal engagements, creates no special charge upon her property, real or personal, as will constitute grounds of equitable relief. It is a legal liability to be enforced in the law courts.

The case of *Yale* v. *Dedere,* which was twice before the New York Court of Appeals, and is reported in 18 N. Y. 265, and 22 ib. 450, involved the question of the power of a married woman to charge her separate estate, either under the statute or independently of it, and the court held, while the statute of that State conferred upon a married woman the right to hold, convey and devise her real and personal property, it did not remove her common law incapacity to contract debts, and for that reason her promissory note is void unless given under such circumstances and in such manner as would induce a court of equity to make it a charge upon her separate estate independently of the statute. *Carpenter* v. *Mitchell, supra.*

The case of *Willard* v. *Eastham,* 15 Gray, 328, is an elaborate and well considered case on this subject. The court expressly approves of the doctrine of *Yale* v. *Dedere, supra,* and adds, that where a married woman is a mere surety, or makes the contract for the accommodation of another, without consideration received by her, the contract being void at law, equity will not enforce it against her estate unless an express instrument makes the debt a charge upon it.

The estate alleged to belong to appellant is a legal one, and whatever contracts she may make in regard to it, she is liable therefor at law. But no contract is proven in relation to her separate property, and it seems to us most illogical to hold, by the mere execution of a single bill or note, which contains no reference whatever to her separate estate, she directly, or even by implication, intended to make the debt a charge upon it.

The conclusion we have reached, and we think it is tained by reason and authority, is, that, to render the sepa estate of a married woman liable, the debt must have b contracted in regard to it, or for her own benefit on the cre of her own separate property, or by some appropriate instr ment executed by her with a view to make the debt specific charge upon it. A general engagement to pay a debt

contracted by a single bill or note, having no reference to her separate property, will create no such charge upon it as can be enforced in a court of equity. Such was the case at bar. The liability sought to be enforced arose out of the fact appellant indorsed the note given by her husband in payment of his own indebtedness. It is silent as to the separate estate of the wife, and it would be making an agreement for the parties which they never contemplated making for themselves, to construe the note into a contract to pay out of a particular property.

The facts alleged presenting no grounds for relief in a court of equity, the decree must be reversed and the bill dismissed.

*Decree reversed.*