## GEORGE H. FORBES, Adm'r, etc.,

### v.

## MARY J. WILLIAMS.

1. PROMISSORY NOTE.—An instrument dated Oct. 25, 1875, as follows: "Whereas my niece, Mary J. Williams, has loaned me the sum of fifty dollars and performed for me sundry services and acts of kindness, and desiring to repay her at some future time when it will not embarrass me or my business, therefore I hereby acknowledge an indebtedness to said Mary J. Williams of two thousand dollars with lawful interest, which sum shall be due and payable to her at my death unless I see proper to pay the same sooner. Delilah Deeds." *Held,* that under the statute the instrument sued on was in form a promissory note; that *prima facie* it evidenced a legal and valid claim for the amount therein specified with interest according to its terms; that exclusive of the "acts of kindness," the mention of which could do no harm, the consideration, as expressed, was sufficient.

2. PROMISSORY NOTE FOR PERSONAL SERVICES.—Where a note is really given without fraud or imposition for property or services which are not of certain value fixed by law, market or custom, nor exactly ascertainable by comparison with others of like general character, the maker will be bound by his own estimate of it, however capricious or extravagant. Personal services are frequently of that character, justifying, by virtue of peculiar circumstances of urgency, timeliness, fidelity, result or such as address the feelings or fancy, an estimate by the party for whom they are rendered beyond the value of others of generally like kind.

3. CONSIDERATION EXPRESSED IN NOTE—COMPETENT TO SHOW THERE WAS NONE.—In an action by the payee against the maker upon a note claimed to have been so given, it must always be competent for the defendant to show that although services were rendered and are expressed to be the consideration, there was really none, in that they were not rendered upon a contract express or implied, but as a kindness and without expectation of pay.

4. NOTE UPON SEVERAL DISTINCT CONSIDERATIONS.—Where a note purports or is otherwise shown to rest upon several distinct considerations the same defense may be made to either as if it stood alone. If a note is originally a gift in whole or in part, it will, *pro tanto,* be void as between the parties.

5. INSTRUCTIONS.—The instructions which authorized a verdict for the full amount even if the services had been rendered without request, contract or expectation of payment, and the note given in purely voluntary remuneration for acts of kindness, were erroneous.

6. EVIDENCE.—No expression of feeling or intention by the maker of the note to the payee in the absence of the latter, and after the making of the instrument sued on, could be admitted to impair its validity or effect.

Forbes v. Williams.

Appeal from the Circuit Court of Jo Daviess county; the Hon. John V. Eustace, Judge, presiding. Opinion filed July 27, 1883.

Mr. Robert D. Russell, for appellant; that the allegations and proof must correspond in a claim against an estate, the same as in any other suit at law, cited Brock v. Slaten, 82 Ill. 282; Lil! v. Brant, 1 Bradwell, 266.

Natural affection does not constitute a valid consideration: Kirkpatrick v. Taylor, 43 Ill., 207; Hamor v. Moore's Adm'r, 8 Ohio St. 239.

A note executed and delivered as a gift is without a valuable consideration and will not support an action either at law or equity: Arnold v. Franklin, 3 Bradwell, 141; Blanchard v. Williamson, 70 Ill. 647; Freeman v. Freeman, 65 Ill. 106; Pope v. Dodson, 58 Ill. 360; Curry v. Powers, 70 N. Y. 212; Smith v. Ware, 13 Johns. 258; Oertel v. Schroeder, 48 Ill. 133; Mills v. Wyman, 3 Pick. 207; Gates v. Winslow, 1 Mass. 63; Story on Promissory Notes, Ch. 5.

The fact that a party lives with a relative and renders services is not of itself consideration for a note. The intention controls, and if the note is intended as a gift, an action can not be maintained on it: Freeman v. Freeman, 65 Ill. 106; Arnold v. Franklin, 3 Bradwell, 141.

A mere moral obligation where a legal obligation never existed, is not a good consideration for an express promise: Dole v. Lincoln, 31 Me. 422; Whitaker v. Whitaker, 52 N. Y. 368; Linsenbigler v. Gourley, 56 Penn. 166.

When only part of the consideration is legal there can only be a recovery *pro tanto:* Parish v. Stone, 14 Pick. 198; Barber v. Backhouse, Peake's Cases, 61; Darnell v. Williams, 2 Starkie, 166; Widoe v. Webb, 20 Ohio St. 431; Guild v. Belcher, 119 Mass. 257; Tye v. Gwynne, 2 Campbell, 346; Story on Promissory Notes, § 187; Daniels on Negotiable Instruments, p. 175, § 201; Bayley on Bills, Ch. 12, p. 494; Byles on Bills, Sharswood's ed. p. 136.

It was error to refuse to permit a niece of the deceased to testify when called by the administrator: Byers v. Thompson, 66 Ill. 421; Freeman v. Freeman, 62 Ill. 189.

Mr. M. D. BROWN and Mr. JACOB FAWCETT, for appellee; that the instrument sued on is a promissory note, cited Underwood's Statutes, Ch. 98, p. 887, § 3; Stewart v. Smith, 28 Ill. 397; Fleming L. Co. v. Burge, 6 Ala. 373; Jacquin v. Warren, 40 Ill. 459: Pelliton v. Larden, 86 Ill. 361.

Any obligation entered into voluntarily and for a good consideration is valid at common law: Wolfe v. McClure, 79 Ill. 564; Tonica & Petersburg R. R. Co. v. McNeely, 21 Ill. 71; Wordsworth v. Thompson, 3 Gilm. 429.

As to consideration: Buchanan v. International Bank, 78 Ill. 505; Burch v. Hubbard, 48 Ill. 171; Gregory v. Scott, 4 Scam. 392; Cooke v. Murphy, 70 Ill. 96; Crane v. Hutchinson, 3 Bradwell, 30; Frank v. Hough, 29 Ill. 145; Sigsworth v. Coulter, 18 Ill. 204; Myers v. Turner, 17 Ill. 179; Townsen v. Water, 63 Ill. 26; Viner's Abr. Consideration, B; Phillips v. Preston, 5 How. U. S. 278; Shirly v. Harris, 3 McLean 330; Clark v. Sigourney, 17 Conn. 511; Stewart v. The State, 2 H. & G. (Md.) 114; Knobb v. Lindsey, 5 Ohio, 471; Schnell v. Nell, 17 Ind. 29; Shepard v. Rhodes, 7 R. J. 470; 2 Kent's Commentaries, 465; Metcalf on Contracts, 163; Woodbridge v. Spooner, 3 Barnwell's Alderson, 235; Daniels on Negotiable Instruments, 142; Bayley on Bills, Ch. 12; Roscoe on Bills, 386; Carson v. Clark, 1 Scam. 113; Austell v. Rice, 5 Ga. 472; Morrison v Blodgett, 8 Foster (N. H.) 238; 1 Parsons on Contracts, 361; 2 Parsons on Bills, 524; Johnson v. Titus, 2 Hill, 606; Oakley v. Boorman, 21 Wend. 588; Robinson v. Raynor, 28 N. Y. 494; Lobdell v. Lobdell, 36 N. Y. 327; 1 Greenleaf on Ev. § 189.

A note, executed delivered and accepted in the life-time of the maker, but made payable at or after his death, is not a bequest but an absolute instrument: Worth v. Case, 42 N. Y. 362; Jackson v. Culpeper, 3 Kelly, 569; Cumming v. Cumming, 3 Kelly, 460; Bristol v. Warner, 19 Conn. 7; Conn v. Thornton, 46 Ala. 587; Varnam v. Belling, 4 McLean, 87; Robey v. Harman, 6 Gilm. 463; Jones v. Morgan, 13 Ga. 515.

No court can depart from or vary the meaning of a contract as expressed in its terms: Herman on Estoppel, 453;

Corbett v. Underwood, 83 Ill. 324; Wilson v. Marlow, 66 Ill. 385; Great Western Ins. Co. v. Rees, 29 Ill. 272; Critten-den v. French, 21 Ill. 598.

A note proves itself and is *prima facie* what it purports to be: Hoyt v. Jaffray, 29 Ill. 104; Scott v. State Bank, 4 Eng. 36.

When an ancestor has acquiesced in acts so as to conclude her, her heirs are likewise concluded: Herman on Estoppel, 337, 349, 350; Porter v. Hill, 30 Tex. 529; McCrevey v. Remson, 19 Ala. 430.

As to fraud: Woods v. Hynes, 1 Scam. 105, 587; Taylor v. Atchison, 54 Ill. 196; Leach v. Nichols, 55 Ill. 273; Glazier v. Streamer, 57 Ill. 91; Murry v. Beckwith, 48 Ill. 391; Ship-ley v. Carroll, 45 Ill. 285.

A note may be made valid by subsequent approval: Bene-dict v. Miner, 58 Ill. 19; Handyside v. Cameron, 21 Ill. 588; Walter v. Trustees, 12 Ill. 64; Delahay v. Clement, 2 Scam. 575.

PLEASANTS J.    Appeal to the circuit court from the judg-ment of the county court on a claim filed therein against the estate of Delilah Deeds, upon an instrument in writing of which the following is a copy:

                    " Pleasant Valley, Ill. Oct. 25, 1875.

"Whereas my niece Mary J. Williams has loaned me the sum of fifty dollars and performed for me sundry services and acts of kindness, and desiring to repay her at some future time when it will not embarrass me or my business, therefore I hereby acknowledge an indebtedness to said Mary J. Williams of two thousand dollars with lawful interest, which sum shall be due and payable to her at my death unless I see proper to pay the same sooner.

                              "Delilah Deeds."

The trial resulted in a verdict for plaintiff for $2,800, being the full amount claimed, on which, after overruling a motion for a new trial, judgment was duly rendered and this appeal taken therefrom.

At the date of the instrument in question Mrs. Deeds was

sixty-three years of age. A sister of appellee was temporarily staying with her. Her last surviving child, a grown daughter, had died in 1872 and her husband in the summer of 1874, leaving her in possession of a stock farm of about 1,500 acres. Appellant was her near neighbor and friend. He administered upon her husband's estate and was her salaried assistant in the management of her own. Messrs. D. & T. J. Sheean of Galena, some twelve miles distant, were her legal advisers from the first until her death.

Appellee's age was a little upward of thirty years. She had been employed in teaching, or copying manuscript, or doing fancy and decorative work at different places, and in the course of years was several times at her aunt's place in Pleasant Valley during periods of varying length.

Her case rested upon the instrument in question and the testimony of two witnesses. Reuben Mickel, as appears from his deposition, had known the plaintiff since 1856, in Powesheik Co. Iowa, Rome, Ga., Chicago, and Davenport, Iowa, in which places respectively, excepting Rome, he was engaged, while plaintiff was there, in different lines—law, real estate, insurance, banking and commission business. He has since met her in Denver, where he also lived, as well as in Breckenridge, Col. and in Green Co. Iowa. When his deposition was taken he was residing in Pueblo Co. Col., and was secretary of the Pueblo County Insurance Co. He drew this instrument. At that time he was living in Davenport, where plaintiff also was then at work. He had never known Mrs. Deeds; but at the request of plaintiff, which her sister says she, by direction of her aunt, wrote to her to make, he went to Pleasant Valley on Saturday, Oct. 23, 1875, delivered to Mrs. Deeds fifty dollars sent by plaintiff, and remained until the forenoon of the 25th when this instrument was signed and delivered to plaintiff's sister Lillie for her, together with a like one for $2,500 for herself, and thereupon he and the latter left together for Chicago. According to his statement, in drawing this paper he acted wholly for Mrs. Deeds and drew it according to what he understood to be her intention, but perhaps somewhat carelessly, from the fact that although he

Forbes v. Williams.

regarded it as a peculiar transaction, yet it was a family matter and therefore did not require the attention he might otherwise have given it.  The substance of her statements before and at the time of signing it, as related by him in several passages of his direct and cross-examination, is that "she was indebted to Mary and intended to pay her, but was in debt to others also, and asked him to draw up a note for $2,000, with the time of payment left optional, but in case of her death to be a claim against the estate; gave no itemized reasons, but simply the amount of $2,000, and said she wanted to pay her well, and if she lived to pay her debts would pay her more than that; said she was willing to give that sum." Again, that plaintiff "had been with her over a year at one time during her sickness, which she had promised to remunerate her for, and had also loaned her money at different times, but did not state the amount, and said she wanted to pay her this $2,000 which she thought would be reasonable compensation."   Again, that "she had repeatedly tried to induce plaintiff to come and stay with her, not as a servant but as one of the family, and had given up the hope of her coming and staying all the time but wanted her to come and stay all she could; and that in fixing the amount of the note she had taken into consideration the loss of time, the expenses of her coming to visit her, and so that she could afford to come oftener."   Still again, that the note was given "to repay the plaintiff borrowed money, $50 of which I delivered at the time, and for her time and attention to her during the year of her sickness, and to pay her for the time she had been with her and for the expenses of coming and going, and to reimburse her for any expenses she might be to in the coming and going hereafter and the time she might spend with her hereafter."   On cross-examination, after repeating the above in substance, he adds: She said "she wanted plaintiff to come there and stay with her, not to live as a servant but to do just whatever she pleased, and that she would pay her for her time."   She "did not say how much money she was owing Mary"—"no specific amount was mentioned as pay for the year she had spent with her, nor for her future society and expenses,"—"no time

was spoken of which she was to spend with her," and "she wanted to make an inducement to spend as much as possible."

Lillie Williams, the only other witness, says nothing of what was stated by Mrs. Deeds at or about the time the paper was signed in relation to the consideration, except that "she stated the amount, $2,000, to pay Mary for her time and labor; it was stated in the note;" and that "the note embodied about the substance of what aunt said when the note was made." All that she testifies to upon the subject of Mary's time and labor is, that she "was at the Deeds place at different times in the life-time of Delilah Deeds. * Mary lived with aunt a year, attending to and taking care of her in her sickness. Aunt told me so several different times; she said ' Mary had been there a year and she wanted to pay her;' she said 'Mary and her had talked it over and she agreed to pay her.' * Mary was at the Deeds place in 1863 or 1864, or both; Delilah Deeds talked about that at the time she signed the note." (Further along she says, " Mary taught school in 1864.") * Mary came here in the winter of 1874–5 to look after her interest in her uncle's estate. She was not present when the paper was signed, nor had she been at Pleasant Valley since the April before.

For the defense, John Carmony testified that he worked on the Deeds farm in 1863, 1864 and 1865; that Mrs. Deeds was sick in bed in 1864 and 1865 for fifteen months; that he knew all the persons that were there at that time, being Thomas Deeds (the husband), Frances Deeds (the daughter), Mrs. Marlow, and Miss Bruce (the hired girl); and that he never saw plaintiff there and does not know her.

Eliza Jane Carmony testified that she lived on the farm of Mr. Deeds in 1864; was school-mate of his daughter, then twelve or fourteen years old; that Mrs. Deeds was sick in bed one half of 1863 and 1864; had a hired girl all the time whose name was Jane Bruce; that Mr. Deeds, the daughter, the hired girl and the neighbors helped to take care of her; that witness used to call there in going to school, and generally went into the sick-room; and that, so far as she saw or heard, the plaintiff was not there at that time. She further testified

that she was working at Mrs. Deeds' when Mickel was there, did all the housework and waited on and slept with her; that the door was open leading into the kitchen and she was through there all the time. She never saw Mickel talk to Mrs. Deeds or to any person except Miss Lillie.

Appellant testified that the first time he ever heard about this note was after Mrs. Deeds' death; that before he was employed in connection with the estate or farm he kept store thirty rods from the house, and was often there; that plaintiff came and stayed some time; was there in 1874, and one more time, and made two short visits after the spring of 1875; that Mrs. Deeds always kept a hired girl; that he never saw Mary do any work, and that if she had done much he would have been apt to know it.

The depositions of Mr. and Mrs. Kellogg were properly excluded. No expression of feeling or intention by Mrs. Deeds toward plaintiff, in the absence of the latter, and after the making of the instrument sued on, could be admitted to impair its validity or effect.

It was error to reject Mrs. Marlow as incompetent to testify because she was a niece of the deceased: Byers v. Thompson, 66 Ill. 421. But we can not see that it was hurtful to the defendant, for the reason that the record does not show what he proposed to prove by her. It appears from the testimony of others that she was one of those who helped to take care of Mrs. Deeds during her sickness in 1863 or 1864, when the principal service of plaintiff is claimed to have been rendered; but we can not know from that what Mrs. Marlow was offered to prove. Counsel should have stated it, in order that its materiality might appear.

The foregoing embraces all the important testimony in the case, and is mainly here given in the language of the witnesses, as contained in the bill of exceptions.

We think that under the statute the instrument sued on was in form a promissory note, and that the testimony sufficiently proves its delivery by the maker to the payee. *Prima facie*, therefore, it evidenced a legal and valid claim for the amount therein specified, with interest according to its

terms. Exclusive of the "acts of kindness"—the mention of which could do no harm—the consideration, as expressed, was sufficient. And so it would be even without the money loaned. For where a note is really given, without fraud or imposition, for property or services which are not of certain value fixed by law, market or custom, nor exactly ascertainable by comparison with others of like general character, the maker will be bound by his own estimate of it, however extravagant or capricious. Personal services are frequently of that character, having no exact likeness in any other, and justifying, by virtue of peculiar circumstances of urgency, timeliness, fidelity, result, or such as address the feelings or fancy, an estimate by the party for whom they are rendered far beyond the value of others of generally like kind. If one sees fit he may lawfully bind himself by the employment of one certain nurse to a price ten times the amount of that for which he could have procured like services, and no less valuable in the general estimate, of another. Wordsworth v. Thompson, 3 Gilm. 429; Burch v. Hubbard, 48 Ill. 171; Buchanan v. International Bank, 78 Id. 505. That such was the character of the services, if any, rendered in this case, we see no reason to doubt.

This is said, however, of services actually contracted for, by the intelligent and voluntary act of the party sought to be charged, whether at a price then fixed or thereafter to be agreed upon. If rendered upon an agreement of the latter kind, there is no limit prescribed by the law to the amount which the debtor may thereafter agree upon and bind himself to pay. Hence if Mrs. Deeds employed or requested plaintiff to render the services in question upon a promise to pay for them, or under circumstances from which the law would imply such a promise, and no price being then fixed she afterward fixed it to the satisfaction of plaintiff at $1,950, or any other sum, and gave her note therefor, the disproportion of the price so agreed on to the real value of the services rendered would constitute no defense to the note.

But in an action by the payee against the maker upon a note claimed to have been so given, it must always be com-

Forbes v. Williams.

petent for the defendant to show that although services were rendered and are expressed to be the consideration, there was really none, in that they were not rendered upon a contract, express or implied, but as a kindness and without expectation of pay. Gage v. Lewis, 68 Ill. 614; Oertel v. Schroeder, 48 Ill. 137; G. W. Ins. Co. v. Rees, 29 Ill. 272. In that case the note would be but a gift; and being also itself but a promise, could not be enforced against the maker or his estate. Blanchard v. Williamson, 70 Ill. 647; Arnold v. Franklin, 3 Bradwell, 141.

So where the note purports or is otherwise shown to rest upon several distinct considerations, the same defense may be made to either as if it stood alone.

Thus where suit was brought on a note given by one partner, in the firm name, for debts of which some were contracted before and the others after another partner was admitted, and the latter defended as to so much of the consideration as consisted of the old indebtedness, the Supreme Court of Massachusetts said: "This is the case of a note founded on two distinct considerations, only one of which is good, where there is no difficulty in making the apportionment. In such case the plaintiff is entitled to recover to the extent of the valid consideration." Guild v. Belcher, 119 Mass. 257; and cite, as decisive authority, Parish v. Stone, 14 Pick. 198. See also Darnell v. Williams, 2 Starkie, 166; Tye v. Gwynne, 2 Campb. 346; Barber v. Blackhouse, Peake's Cases, p. 61. In Story on Promissory Notes the same doctrine is announced, and one of the illustrations there given covers precisely the defense in this case: "If a note is originally a gift, in whole or in part, * it will, *pro tanto*, be void as between those parties ": Sec. 187, and citations in note.

It is not claimed that any recovery can be had for mere "acts of kindness." Stone v. Garrick's Adm'r, 1 Allen, 175; Hamor v. Moore's Adm'r, 8 Ohio St. 239; 1 Parsons on Contracts, 358, and notes. Treating this phrase as further descriptive of the services rendered, or as superfluous, two distinct considerations are expressed, which can be exactly apportioned since the amount of one is specifically stated.

Fifty dollars being for the money loaned, the residue, $1,950, must be for the " sundry services performed."

In relation to these services several important questions fairly arise upon the unopposed testimony for the plaintiff, which is made up wholly of alleged admissions by Mrs. Deeds.

First, were they performed under any contract with her, express or implied, or with any expectation of pay therefor?

If under an express contract, what obligation did it impose upon appellee? Is there anything to indicate that she ever felt herself ·to be under any obligation whatever? What kind of service was she to perform? Or was it to be any kind for which she might from time to time be called upon? · During what time? or was it so long as they could mutually agree? What rate of compensation? and when and how to be paid? or were these also left for after arrangement? If so, why was there not some evidence of an attempt at some time afterward to effect the arrangement? Upon the theory of an express contract the testimony might reasonably be expected to be more specific as to its provisions, since it is not claimed to have been a mere general engagement to take care of the deceased during a period of sickness.

If under an implied contract, what are the circumstances from which it is claimed to arise? Is there any evidence of such a request as would raise it precedent to the performance of any service? It may be presumed that Mrs. Deeds, when sick in bed, asked plaintiff or any other person within call for such attention as she thought from time to time she needed; as, to administer medicine, give her a drink, arrange her pillow or·covering, and the like; but surely this could not create an obligation to pay for it, even in favor of a stranger in blood. Nor do we expect debtors upon implied contracts to fix the amount of the indebtedness and time of payment, without some conference on the subject with the creditor.

It is said she admitted that Mary " had been with her over a year at one time during her sickness, for which she had promised to 'remunerate' her," and to "'pay' her," and that " Mary and her had talked it over, and she agreed to pay her."

Forbes v. Williams.

These are the only intimations of promises made by deceased at any time prior to the execution of the note sued on.

But were they made before the alleged services were fully performed? It is not so stated. What are the probabilities? Mary was her niece. She came there from time to time, at irregular intervals, and remained for periods of varying length—indicating that she came on visits rather than to serve. The only references her aunt is shown to have made to the capacity in which she had been or was expected ever to be there, show it was "not as a servant, but as one of the family"—"not to live as a servant, but to do just whatever she pleased." In 1863, during all this sickness, Mrs. Deeds was otherwise reasonably supplied with help. Beside, she then was and long had been and continued to be a married woman residing with her husband, and so far as appears without any separate estate or property. Had she, then, any capacity to make such a contract, express or implied, as must be proved in order to sustain this verdict and judgment? Williams v. Hugunin, 69 Ill. 214; Thompson v. Weller, 85 Id. 197. If any there was, was it not in law with her husband, and was not the claim against him barred by limitation before his death, which was in 1874? Upon these considerations it might well have been argued that the promise referred to, if any was made, was made after the services were performed, and founded on gratitude rather than contract, to reward her niece for what she regarded as acts of mere kindness and affection. Such promises, if such they were, having no foundation in legal or moral obligation, and by a married woman, were absolutely void, and could not be made legally binding by ratification.

Second. How much of the $1,950 was based upon the consideration of services? If a legal contract was made for them were they ever estimated by Mrs. Deeds at that sum? Did she ever agree to pay that amount for them? Or did it also include future time, services and expenses? In addition to the testimony of Mickel to this effect, as above set forth, he also said he didn't know why in the instrument he referred to them only in the past tense when the consideration was for

future services also, except it was carelessness, or as he was looking upon it as a family matter he thought it could make no difference. Recovery for them, if any had been shown, would not be proper because the instrument on which alone the claim of plaintiff was based proves a promise to pay only for services past; and when claims are filed in the county court against the estates of deceased persons and contested, the allegations and proofs must correspond as in other cases. Brock v. Slaten, 82 Ill. 282; Lill v. Brant, 1 Bradwell, 266. If it appears that only a portion of this sum, at most, could be recovered in this suit, and that how much, if any, is entirely uncertain from the evidence, then whatever of difficulty this presents was for the plaintiff to overcome.

The foregoing suggestions are not intended to indicate an opinion upon the weight or effect of the testimony relating to any disputed fact, and are confined to such as seem to aid the defense solely for the purpose of showing that the evidence fairly raised these questions. It was the right of the defendant to have them submitted to and passed upon by the jury under proper instructions as to the law.

We think they were not so submitted. The verdict was for the full amount of the note with interest. That this was proper would not necessarily follow from the facts that it was made and delivered in good faith and voluntarily, to pay plaintiff for services performed for and money loaned to and time spent with the maker, and so received by plaintiff, and that such services were performed and extended over a year, as the jury are told in the third instruction given for plaintiff. There was no warrant for adding time spent to services performed. If any was spent that was not occupied in services, the note did not promise to pay for it. And if the consideration of the services was not valid, for any one of several reasons above suggested, and all of which were supported by some evidence, then notwithstanding all the facts set forth in the instruction the verdict was wrong to the extent of $1,950, and interest thereon; and if it was not an invalid consideration, yet if any portion of the $1,950 was for future services, time and expenses, it was wrong to that extent.

The sixth and eleventh also ignore the defense that there was a total want of one of the distinct considerations for which the note was expressed and otherwise shown to have been given.

The tenth is: "If the jury believe from the evidence that said Delilah Deeds got for the note in question all that she expected to get for it, so far as relates to quantity and value in the transaction in which the note was given, then the plaintiff, Mary J. Williams, would be entitled to recover in this action, and the jury should so find." The fact might be as here stated, although the note had been wholly a gift.

The twelfth tells the jury that if they "believe from the evidence that the note in question in this suit was given by Delilah Deeds to the plaintiff voluntarily and in good faith, with full knowledge of what she was doing, in consideration of any acts or services beneficial to the said Delilah Deeds, done or performed by said plaintiff, then the plaintiff would be entitled to recover the full amount of said note and interest, and the jury should so find." Further comment upon this is unnecessary.

The thirteenth and fourteenth would also authorize a verdict for the full amount even if the services had been rendered without request, contract, or expectation of payment, and the note given in purely voluntary remuneration for acts of kindness.

Those asked by defendant and refused we think were faulty. The one numbered 8 because there was no evidence that the $50 was voluntarily given without request. No. 10 because the $50 transaction was fatal to its hypothesis of a total want of consideration. No. 11 was not supported by evidence. No. 9, which we regard as of most importance, makes "acts of kindness" a distinct consideration, while for reasons above given the verdict might be sustained without regard to them, if the consideration of services was valid and embraced only such as had been rendered. An instruction that in case they should find that consideration not valid the jury ought to find only for the money loaned, if proved, would have been proper.

We are of opinion that there was error in giving the instructions for plaintiff above referred to and in overruling defendant's motion for a new trial: for which the judgment is reversed and the cause remanded.

Reversed and remanded.