## BRAITHWAITE, APPELLANT, *v.* HARVEY, RESPONDENT.

[Submitted February 19, 1894. Decided March 19, 1894.]

ADMINISTRATORS—*Foreign judgment—Pleading.*—A judgment recovered against an administrator in another state is of no binding effect as against an administrator of the same intestate in this state, nor is it evidence of a debt, and therefore cannot be pleaded as a part of plaintiff's cause of action in a subsequent suit on the same demand against the administrator appointed in this state. Nor is it necessary to plead such judgment in order to show that the demand sued on in this state had been given credit for a sum realized under the foreign judgment.

SAME—*Extraterritorial authority—Estoppel.*—An administrator has no authority to act or bind the estate outside the jurisdiction of his own state, and, therefore, where he has defended a suit in another state in the name of the administrator appointed in that state, he is not estopped from disputing the claim upon which the action was brought when sued thereon in his own state.

STATUTE OF LIMITATIONS—*New promise.*—Letters from the defendant to a third person in which he referred to plaintiff's claim, saying: "If I do not hear from you soon I will tender amount due . . . . whatever is due is ready . . . . whenever I can safely pay you or plaintiff. I am not satisfied about the settlement. . . . . Please write me your understanding of it"; also, "if I settle with your folks, if they will see me clear of plaintiff," contain no definite, unqualified acknowledgment of plaintiff's demand or promise to pay the same, and are, therefore, insufficient to remove the bar of the statute of limitations.

*Appeal from Seventh Judicial District, Custer County.*

ACTION against an administrator. Judgment was rendered for the defendant below by MILBURN, J. Affirmed.

*George W. Newton,* and *Middleton & Light,* for Appellant.

The facts alleged in paragraph 2 of plaintiff's complaint, in connection with all the facts set forth in the other allegations of the complaint, work an estoppel against the defendant in this action, and against the estate of Leighton, to the extent that this defendant as administrator is not now at liberty to question the balance presented to him for allowance by the plaintiff against the estate of the said Leighton, as a true balance due and unpaid upon the contract in question. The facts set forth in paragraph 21, in connection with other facts alleged in the complaint, estopped the defendant from interposing the technical defense of the statute of limitations. The defendant has had his day in court upon the claim in question. "Neither the benefit of judgment on one side, nor the obligation on the

other, are limited exclusively to the parties and their privies."
(Freeman on Judgments, 3d ed., §§ 174, 175.)  "A party who
actually appears and defends in the name of another is bound
by the judgment." (*Montgomery* v. *Vickery*, 110 Ind. 211;
*Valentine* v. *Mahoney*, 37 Cal. 389; Freeman on Judgments,
§ 163 *a.*)  "One who, though not a party, defends or prose-
cutes an action by employing counsel, paying costs, and by
doing those things which are usually done by a party, is bound
by the judgment rendered therein." (*Stoddard* v. *Thompson*,
31 Iowa, 81; *Elliott* v. *Hayden*, 104 Mass. 180; *Train* v. *Gold*,
5 Pick. 380; *Jackson* v. *Griswold*, 4 Hill, 522; *Palmer* v.
*Hayes*, 112 Ind. 289; *Burns* v. *Gavin*, 118 Ind. 320; *Roby*
v. *Eggers*, 130 Ind. 415; *De Metton* v. *De Mello*, 12 East, 234;
*Cromwell* v. *County of Sac*, 94 U. S. 351.)  An administrator,
wherever appointed, is in privity with the intestate, but there
is, ordinarily, no privity in law or estate between administrators
appointed in different sovereignties, and a judgment against one
is not a bar against the other. (*Hill* v. *Tucker*, 13 How. 466,
467.)  They are deemed to stand like other persons not privies
in blood, privies in law or privies by estate.  The facts alleged
against the administrator of Leighton's domicile, *i. e.*, the defend-
ant, bring him into such relation to the judgment rendered in
North Dakota against the ancillary administrator appointed
there, as to estop the defendant from saying that it was not cor-
rect or that the amount therein adjudged to be due is barred by
the statute of limitations *i. e.*, the facts alleged in the complaint
in this action as a whole constitute a cause of action based upon
the contract of November 3, 1880, and an equitable estoppel
against the defendant as to all defenses existing prior to its
rendition, either under the laws of North Dakota or Montana.
The ancillary administration is subsidiary and supplemental to
the domiciliary administration.  If assets of the estate abroad
come to the knowledge of the principal administrator, and an
ancillary administration becomes needful or prudent, the princi-
pal administrator should procure his own or another's appoint-
ment, and will be held responsible for due diligence and fidelity.
(Schouler on Executors and Administrators, § 175.)  In the
very nature of things, to the extent of the powers and duties
of the ancillary administrator they almost interlace, though

the domiciliary administrator has the greater powers and duties. Thus, the principal administrator may receive payment from a debtor outside of the sovereignty from which he receives his appointment, and it will be upheld even against an administrator appointed where the debtor resides. (*Wilkins* v. *Ellett*, 9 Wall. 740.) Where there are creditors, however, within the jurisdiction of the ancillary administrator, they have a legal right to insist that all assets therein be there administered and distributed. The rule is founded upon the policy of the state to protect the interests of its home creditors. (*Wilkins* v. *Ellett*, 9 Wall. 740.) After the payment of the home creditors, the residuum is to be transmitted to and distributed at the place of domicile (*Wilkins* v. *Ellett*, 9 Wall. 740), unless for some special reason, as to charge the security for faithful administration in the ancillary administration, equity would require its retention there. (*Porter* v. *Heydock*, 6 Vt. 374; *Jennison* v. *Hapgood*, 10 Pick. 77; *Parsons* v. *Lyman*, 20 N. Y. 103; *Stokely's Estate*, 19 Pa. St. 476.) An ancillary administrator cannot recover in an action against a debtor of the intestate not resident in the jurisdiction in which he acts, even though no other administrator has been appointed (*Abbott* v. *Coburn*, 28 Vt. 663, 67 Am. Dec. 735), but an administrator appointed in the jurisdiction of the decedent's domicile may maintain an action against any debtor of his intestate wherever resident, when found within the jurisdiction of his appointment. An administrator of the intestate's domicile may appoint an attorney or agent to receive and discharge a debt due to his intestate in any jurisdiction, certainly, where there are no local creditors requiring ancillary administration. (*United States* v. *Coxe*, 18 How. 100.) Except as the ancillary administration conserves the interest of "home creditors" it is subsidiary to the principal administration. They are, in law even, very close to each other; the domiciliary administrator, in a way, being the superior of the ancillary administrator by virtue of his interest in the residuum of the estate. However, the law does not hold them in privity any more than it does other persons who are not privies in blood, privies in law, or privies by estate. But we have shown other persons may, by their acts, so connect themselves that both are bound by a

judgment against one. To the person thus bound and not a party to the action the judgment stands as an equitable estoppel. Though a volunteer he has submitted the matter involved to an adjudication in the name of another. . Such is the case at bar. The court erred in striking out paragraph twenty-two of plaintiff's complaint, in this, that defendant alleges acknowledgments showing a continuing contract and new promises in writing. If these new promises, admissions, and acknowledgments were sufficiently specific, although made to a third person or to a stranger, and it appears that they were intended to be communicated, they toll the statute, and for that reason are material allegations. Section 53 of the Code of Civil Procedure, provides: "No acknowledgment shall be sufficient evidence of a new or continuing contract whereby to take the case out of the operation of this act, unless the same is contained in some writing signed by the parties to be charged thereby, but this act shall not alter the effect of any payment of principal or interest." An acknowledgment of indebtedness made by a debtor to a stranger with the intent that it shall be communicated to and influence the creditor, is as effectual to defeat the statute of limitations as if made to the creditor or his authorized agent. (*De Freest* v. *Warner*, 98 N. Y. 217; 50 Am. Rep. 657.) It is alleged that said promise and acknowledgment were made in relation to the claim in question in this action, that it was made to J. D. Biggert, who is alleged to have been acting on behalf of persons interested in the said claim, viz: the intervenors. Braithwaite was also interested in the claim; he could maintain the action in his own name for the benefit of himself and the intervenors as the party with whom and in whose name the contract was made for the benefit of another, the trustee of an express trust. (*Braithwaite* v. *Power*, 1 N. Dak. 455, and cases cited; Code Civ. Proc. § 6.) The law would presume that an acknowledgment made to the agent of the parties in interest, or any of them, was intended to be communicated. In the case at bar the acknowledgments were communicated. They tolled the statute of limitations. The allegations contained in the twenty-second paragraph of the complaint are plenary evidence of acknowledgments and new promises, and they present material facts to be submitted to the jury.

Whether new promises related to the debt in question is for the jury, and no evidence is to be rejected on that issue. (*Cook* v. *Martin*, 29 Conn. 63; *Buckingham* v. *Smith*, 23 Conn. 453; *Shipley* v. *Shilling*, 66 Md. 558; *McCormick* v. *Brown*, 36 Cal. 180; 95 Am. Dec. 170; *Farrell* v. *Palmer*, 36 Cal. 187; *Schmidt* v. *Pfau*, 114 Ill. 494; *Porter* v. *Elam*, 25 Cal. 292; 85 Am. Dec. 132.)

*Strevell & Porter*, for Respondent.

I.   A judgment rendered in a foreign state or jurisdiction against an administrator in such foreign state or jurisdiction is utterly without validity or effect as a claim against an administrator of the estate of the same deceased person in this state. In such case there is neither privity of law nor estate.   This doctrine has been so often and so unrelentingly held that but few leading cases need be cited to sustain it here.   (*Stacy* v. *Thrasher*, 6 How. 44; *Aspden* v. *Nixon*, 4 How. 467; Freeman on Judgments, 3d ed., § 163; *McLean* v. *Meek*, 18 How. 16; *Stacy* v. *Thrasher*, 6 How. 44; *Brodie* v. *Bickley*, 2 Rawle, 431; Story's Conflict of Laws, 739.)

II.   But the appellant says the defendant in this action appeared in the court in North Dakota, employed counsel and did other things, and is therefore estopped to deny that a judgment rendered against a foreign administrator is valid against another administrator in this state.   To this point the appellant cites a number of authorities which are no doubt correct law in cases to which they apply, but they have not the remotest application to the case at hand.   It is no doubt true that in some cases parties in direct privity may bind themselves by contesting in litigation where they are not directly parties, but that is not this case. (*Stacy* v. *Thrasher*, 6 How. 44; *Johnson* v. *Powers*, 139 U. S. 157.)   It is urged by appellant that by defending in the suit in Dakota, this administrator and defendant in this case validated a judgment in a foreign jurisdiction so as to make it binding as evidence of debt against assets of the deceased in this state.   So far from that position having a semblance of authority to sustain it, it will be observed in the case last cited the supreme court says such judgment has no validity as evidence of debt, even though the judgment

be against the same administrator who is sought to be charged in a jurisdiction foreign to the one where the judgment was rendered.    If this judgment had been given in the state of North Dakota, in favor of the plaintiff in this action and against this identical defendant as administrator, it would have had no validity to bind the estate of the deceased in this state.    With how little show of reason can it be urged then that any acts of the defendant in defending a suit in a foreign jurisdiction would bind the assets of the deceased in this state.    It would not have that effect if the judgment had been against this defendant instead of one having no privity with him.    In dissenting from the majority opinion in *Johnson* v. *Powers,* 139 U. S., Justice Brown, at page 164, says: "It is true that these proceedings are not binding upon others than parties and privies, and if this were an action against the administrator of the same estate in the state of New York, it is conceded at once that under the case of *Stacy* v. *Thrasher,* 6 How. 44, the action would not lie."    (See, also, Woerner's American Law of Administration, 360.)

III.    Appellant discusses at considerable length in his brief the relations of ancillary or auxiliary administration to administration at the domicile.    Suppose we should admit that auxiliary and domiciliary administration are the same; suppose we should go still further and admit that a judgment actually existed in favor of plaintiff and against this defendant as administrator, in a foreign jurisdiction, would such admissions confer validity upon such judgment to affect assets of the deceased in this jurisdiction?    There is not an authority to be found, so far as we know, that such would be the effect of his judgment.

IV.    But the appellant avers that he had alleged facts in his complaint sufficient to show that "Mr. Leighton in his lifetime admitted the indebtedness and acknowledged his liability thereunder."    Suppose again we should admit that as a fact, which is not true, but if it were, that would not release a statute of bar.    Where is the actual unqualified promise to pay which must always exist to waive the statute?    In the letters signed by Mr. Leighton in his lifetime there is scarcely sufficient to make even a shadow of approach to the legal require-

ment to take a barred claim from under the statute of bar. Of course appellant can say the contrary in his complaint, but when he presents, as he must present, the identical promise upon which he relies, the court will judge the matter from, that, and not from the mere assertion of the pleader. What is pleaded falsely, either as to fact or inference, can never be well pleaded. It will be remembered that at the time these alleged promises were made by the deceased an action was pending in the court in North Dakota against him and the two Powers and one Akin. "A new promise may arise out of such facts as identify the debt, the subject of the promise, with such certainty as will clearly determine its character, fix the amount due, and show a present unqualified willingness and intention to pay it at the time acted upon and acceded to by the creditor." (*Wachter* v. *Albee,* 80 Ill. 47.) Did these parties or any one of them at the time act upon this pretended promise, abate the suit, or accept any promise or change their conduct to the extent of one hair? Did the promise fix any amount due or even intimate any amount which was due to any one? The acknowledgment must be a direct, distinct, unqualified admission of the debt which the party is liable and willing to pay. (*McCormick* v. *Brown,* 36 Cal. 185; 95 Am. Dec. 170; *Biddel* v. *Brizzolara,* 64 Cal. 355; *Bell* v. *Morrison,* 1 Pet. 351.)

V. And finally, what right has this plaintiff to maintain this action? Our statute in its very inception provides that "every action shall be prosecuted in the names of the real party in interest except as otherwise provided in the act itself." (Code Civ. Proc., § 4.) But appellant alleges Braithwaite is trustee of an express trust and is therefore entitled under section 6 of the same code to bring this action. Braithwaite's right to maintain the former suit it seems was challenged in a foreign state. Under the contract which was set up between the intervenors and Braithwaite, the court decided that he was a trustee and therefore, under a statute not dissimilar to ours, could maintain the action as such trustee. But all that, and whatever there was in the account or contract was merged into the judgment which was recovered in that action. (*Sessions* v. *Johnson,* 95 U. S. 347.) We are aware of cases which hold

that a creditor of a copartnership may proceed against the assets of a deceased partner without exhausting his resources against the surviving partners, but we are not aware of any case which holds that where a judgment was taken in a joint action, as in this case, the whole amount can be claimed from a deceased obligor's estate, and the other judgment debtors be passed by.

PEMBERTON, C. J.—Through this action plaintiff seeks to recover judgment against Phillip Harvey, administrator of Joseph Leighton, deceased, on a demand for the payment of five thousand five hundred and thirty-five dollars and ninety-three cents, and interest, arising on a contract hereinafter referred to. The claim was presented to, and disallowed by, the administrator of the decedent. This action was then brought in the district court thereon. The questions involved in this appeal arise on the action of the trial court in striking from the complaint portions thereof, on motion of defendant, and thereafter sustaining demurrer interposed to the complaint, on the ground that it shows no sufficient facts to constitute a cause of action, because it appears on the face thereof that the cause of action is barred by the statute of limitations.

It appears that in 1880 a contract for the transportation of certain freight from Bismarck, Dakota, via the Missouri river by boat to Fort Buford, was made between plaintiff, as transporter, and decedent and several others, as consignors. The contract was made and evidenced by the following letter:

"BISMARCK, D. T., Nov. 3, 1880.

*"Capt. Wm. Braithwaite, Steamer 'Eclipse.'*

"DEAR SIR: On your accepting this proposition, will agree to give you one dollar and seventy-five cents ($1.75) per one hundred pounds, from Bismarck to Fort Buford, on freight up to the amount of one hundred tons, and on all over and above one hundred tons, one dollar and fifty cents ($1.50) per one hundred pounds. Receipts to be equal to 100 tons to Buford. Freight to be paid on receipt of bills of lading by draft at ten days' sight on Jos. Leighton, St. Paul.

"Yours, etc.    J. C. BARR,

"Agt. for H. C. Akin, Jos. Leighton & Benton Line."

The freight mentioned was transported, as appears, with some delays and other incidents in relation to the fulfillment of the contract, which are not necessary to recite in this determination, and thereby the claim for the enforcement of which this suit is prosecuted accrued in said year.

The complaint not only pleads this contract, but alleges that on the twelfth day of November, 1887, this plaintiff instituted a suit in the district court of the then territory of Dakota, in and for the county of Burleigh, now in the state of North Dakota, against Joseph Leighton, and several other parties alleged to be interested with him, to recover the amount alleged to be due plaintiff thereon. This suit was by attachment, and the property of Joseph Leighton in said territory at the time was seized thereunder. All the proceedings in said suit, and the history thereof, are set out in the complaint, or referred to as exhibits, and made part thereof, including the judgment of the district court, and the appeal therefrom to the supreme court of said territory, and the judgment of said supreme court. In these allegations the death of Joseph Leighton is shown to have occurred on the second day of September, 1888, at Custer county, in the state of Montana, where he resided. Joseph Leighton was never personally served with process in the Dakota suit. After his death one Harvey Harris was appointed administrator of his estate in Dakota territory, and appeared as such, and defended such suit. It seems, too, that, pending said suit in Dakota, certain other parties were permitted to intervene therein. These matters are particularly set out in paragraphs 17, 19, 20, 21, 22, and 23 of the complaint, and are as follows:

"17. That thereafter, on or about the eleventh day of February, 1889, one Harvey Harris, of said Burleigh county, was duly appointed administrator of the estate of said Joseph Leighton, deceased, by the then probate court of said Burleigh county, territory of Dakota, the same being a court of general jurisdiction in probate matters, and having and possessing jurisdiction for the appointment of the said Harris, as hereinbefore shown; that, after qualifying under said appointment, in accordance with the laws of the then territory of Dakota, now state of North Dakota, the said Harris entered

upon the discharge of his duties as such administrator of the estate of said Joseph Leighton, deceased, in said Burleigh county and territory, and continued in the discharge of said duties as such administrator, until the said estate in said Burleigh county, then territory of Dakota, now state of North Dakota, was fully administered."

"19. That thereafter, on or about the fifteenth day of March, 1889, by stipulation, a copy of which is hereto attached and referred to, and found upon page 46 of Exhibit '1,' and by an order of said district court, in which said action was pending, a copy of which order is hereto attached and referred to, and found upon pages 47 and 48 of Exhibit '1,' hereto attached, said Harvey Harris, as administrator of the estate of Joseph Leighton, deceased, came into said court, and entered his appearance in said action, and as a party defendant therein, and as the administrator and successor of the said Joseph Leighton, deceased, and that said action was revived and continued against said Harris, as said administrator, and thereafter proceeded with said Harris as said administrator of said Joseph Leighton, deceased, as a party defendant.

"20. That on or about the twenty-third day of February, 1889, William Rea and George F. Robinson, copartners as Robinson, Rea & Co., J. C. Kay and Woodruff McKnight, copartners as Kay, McKnight & Co., A. W. Cadman as A. W. Cadman & Co., and Joseph McC. Biggert, applied to said court to intervene in said action, and by said court were permitted so to do, and so did, and thereafter said action proceeded with said intervenors as parties thereto; and that a copy of the order of said court permitting said intervention is hereto attached and referred to, and found on pages 51 to 62 of Exhibit '1,' hereto attached; and said intervenors served and filed their complaint in intervention in said action, and a copy of the same is hereto attached, and referred to and found upon pages 53 to 60 of said Exhibit '1,' hereto attached, and that thereafter, on or about the twenty-second day of March, 1889, the plaintiff served and filed his answer to said intervenors' complaint, and a copy of the same is hereto attached, and referred to, and made a part hereof, and found upon pages 61 to 66 of Exhibit '1,' hereto attached.

"21. That the defendant herein, as the general administrator of the estate of said Joseph Leighton, deceased, immediately upon his appointment and qualification as such, as hereinbefore shown, was notified of the pendency of said action in said Burleigh county, territory of Dakota, now state of North Dakota, and of the plaintiff's claim therein, and thereafter said action proceeded to trial in said district court, and the defendant herein the same contested and defended in the name of said Harvey Harris as administrator, as hereinbefore shown, and therefore invoked the jurisdiction and determination of said court, employed counsel, produced evidence, and the issues of said contest and defense prosecuted to a final determination; and such proceedings were had in said action from time to time by the direction and co-operation of the defendant herein, that on the twenty-eighth day of August, 1891, final judgment was rendered and entered in said action, in favor of the plaintiff and the said intervenors, and against the defendant Harvey Harris, as administrator of the estate of said Joseph Leighton, deceased, to be paid in due course of administration, and the other defendants in said action, except Akin, for the sum of seven thousand three hundred and thirty-five dollars and eighty-five cents, and for certain costs of said action, amounting to the sum of two hundred and fifty dollars and thirty-six cents, and that said judgment is in full force and unreversed, and that a copy thereof is hereto attached, and referred to as, and made a part of, this allegation, and found upon pages 73 and 89 of Exhibit '1,' hereto attached.

"22. That the said Joseph Leighton, in his lifetime, in writing, signed by him, the said Joseph Leighton, and on the twenty-first day of July, 1888, acknowledged the said indebtedness under the said contract for the work, labor, and service performed under and by virtue of said contract of affreightment by this plaintiff, as aforesaid, which acknowledgment was in words and figures as follows, that is to say:

"'Joseph Leighton,                      E. B. Weirick,
            "'President.                      Cashier.
    "'W. B. Jordan,                       H. B. Wiley,
            "'Vice Pres't.                    Asst. Cashier.

    "'2,752          FIRST NATIONAL BANK.
"'Capital.................................................................$50,000
"'Surplus and undivided profits........................... 65,000

" ' MILES CITY, Montana, 7/21, 1888.
" '*J. D. Biggert, Pittsburg,*

" ' DEAR SIR: Nothing from you yet. If I don't hear soon, I will go to Bismarck, and tender amt. due, as I don't want to be bothered any more. Whatever is due is ready, as it has been for the last seven years, whenever I can safely pay either you or Braithwaite.     Yours truly,     J. LEIGHTON.'

"That the sum owing to plaintiff, as shown by the allegations hereinbefore contained, was the amount, and not otherwise, referred to in said letter; and the Braithwaite mentioned therein is this plaintiff, and none other; and the said J. D. Biggert, claiming to act and acting on behalf of said intervenors, was not a stranger to the transaction. That on divers and sundry times the said Joseph Leighton acknowledged said indebtedness, to wit, on the twenty-seventh day of June, 1888, on the twenty-second day of July, 1888, and on the fifth day of August, 1888, as will more fully appear from pages 74 to 77 of Exhibit '1,' hereto annexed, and made a part hereof. That again, on the first day of August, 1888, the said Joseph Leighton, by one George T. Webster, his attorney, duly authorized so to do, acknowledged under oath the making of the contract of affreightment hereinbefore mentioned, and the voyage, as will more fully appear from pages 42 to 45 of said Exhibit '1,' hereto annexed, and made and referred to as a part hereof.

" 23. That there has been paid plaintiff, and applied in liquidation of a part of the amount so due plaintiff, as aforesaid, from the said Harvey Harris, as administrator of the estate of Joseph Leighton, deceased, the sum of four hundred and thirteen and 92-100 (413.92) dollars, said payment being made on the thirty-first day of March, 1892. That theretofore, and the twenty-eighth day of November, 1891, there was paid on account of said indebtedness owing to this plaintiff the further sum of two thousand dollars ($2,000), which sum was paid for and in behalf of the said Joseph Leighton by Kelly & Jordan, who had heretofore obligated themselves to pay the same for and in behalf of the said Joseph Leighton. And that the estate of the said deceased in the territory of Dakota, now state of North Dakota, has been fully administered upon, settled, and exhausted, and said administrator's final accounts

presented to the county court in and for said Burleigh county, state of North Dakota, the same having exclusive jurisdiction therein, and by said court passed, allowed, and approved, and said administrator discharged from said trust, and that a copy of the order of said county court passing, allowing, and approving said final account is hereto attached, and referred to and made a part hereof, and found on pages 92 to 94 of Exhibit '1,' hereto attached."

On motion of the defendant the court struck these paragraphs from the complaint, on the ground that they were irrelevant and redundant. This action of the court is assigned as error. To determine this question it is necessary to determine the force and effect of a judgment against an administrator in one state against an administrator of the same estate in another state.

In *Johnson* v. *Powers*, 139 U. S. 156, this subject is thoroughly discussed, and the authorities are collected and cited. In this case Mr. Justice Gray, delivering the opinion of the court, says:

"A judgment *in rem* binds only the property within the control of the court which rendered it, and a judgment *in personam* binds only the parties to that judgment and those in privity with them.

"A judgment recovered against the administrator of a deceased person in one state is no evidence of debt in a subsequent suit by the same plaintiff in another state, either against an administrator, whether the same or a different person appointed there, or against any other person having assets of the deceased." (*Aspden* v. *Nixon*, 4 How. 467; *Stacy* v. *Thrasher*, 6 How. 44; *McLean* v. *Meek*, 18 How. 16; *Low* v. *Bartlett*, 8 Allen, 259.)

In *Stacy* v. *Thrasher*, 6 How. 44, in which a judgment, recovered in one state against an administrator appointed in that state, upon an alleged debt of the intestate, was held to be incompetent evidence of the debt in a suit brought by the same plaintiff in the circuit court of the United States held within another state against an administrator there appointed of the same intestate, the reasons given by Mr. Justice Grier have so strong a bearing on the case before us, and on the argument of the appellant, as to be worth quoting from:

"The administrator receives his authority from the ordinary or other officer of the government where the goods of the intestate are situate. But coming into such possession by succession to the intestate, and encumbered with the duty to pay his debts, he is considered in law as in privity with him, and therefore bound or estopped by a judgment against him. Yet his representation of his intestate is a qualified one, and extends not beyond the assets of which the ordinary had jurisdiction." *Stacy* v. *Thrasher*, 6 How. 53.

In answering the objection that to apply these principles to a judgment obtained in another state of the union would be to deny it the faith and credit, and the effect, to which it was entitled by the constitution and laws of the United States, he observed that it was evidence, and conclusive by way of estoppel, only between the same parties, or their privies, or on the same subject matter when the proceeding was *in rem;* and that the parties to the judgments in question were not the same; neither were their privies, in blood, in law, or by estate; and proceeded as follows:

"An administrator under grant of administration in one state stands in none of these relations to an administrator in another. Each is privy to the testator, and would be estopped by a judgment against him; but they have no privity with each other, in law or in estate. They receive their authority from different sovereignties, and over different property. The authority of each is paramount to the other. Each is accountable to the ordinary from whom he receives his authority. Nor does the one come by succession to the other into the trust of the same property, encumbered by the same debts." (*Stacy* v. *Thrasher*, 6 How. 59, 60.)

"It is for those who assert this privity to show wherein it lies, and the argument for it seems to be this: That the judgment against the administrator is against the estate of the intestate, and that his estate, wheresoever situate, is liable to pay his debts. Therefore the plaintiff, having once established his claim against the estate by the judgment of a court, should not be called on to make proof of it again. This argument assumes that the judgment is *in rem*, and not *in personam*, or that the estate has a sort of corporate entity and unity. But

that is not true, either in fact or in legal construction. The judgment is against the person of the administrator, that he shall pay the debt of the intestate out of the funds committed to his care.. If there be another administrator in another state, liable to pay the same debt, he may.be subjected to a like judgment upon the same demand, but the assets in his hands cannot be affected by a judgment to which he is personally a stranger.   The laws and courts of a state can only affect persons and things within their jurisdiction.   Consequently, both as to the.administrator and the property confided to him, a judgment in another state is *res inter alios acta*.   It cannot even be *prima facie* evidence of a debt, for, if it have any effect at all, it must be as a judgment, and operate by way of estoppel." (*Stacy* v. *Thrasher*, 6 How. 60, 61.)

In *Low* v. *Bartlett*, 8 Allen, 259, following the decisions of this court, it was held that a judgment allowing a claim against the estate of a deceased person in Vermont, under statutes similar to those of Michigan, was not competent evidence of debt in a suit in equity brought in Massachusetts by the same plaintiff against an executor appointed there, and against legatees who had received money from him; the court saying: 'The judgment in Vermont was in no sense a judgment against them, nor against the property which they had received from the executor.' (8 Allen, 266.)

If the judgment recovered in Dakota against the administrator there is of no binding force and effect, not even effectual as evidence of a debt, against the administrator in this state, as is held by the authority just quoted, then the pleading of the same, as is done in this case, could subserve no valuable purpose, and it cannot be properly contended that the court erred in striking the same, and all reference thereto, from the complaint.   Appellant contends that it was necessary to plead such judgment and proceedings in order to show that the demand sued on here had been given credit for the amount realized under the Dakota judgment.   We think this position untenable.   Such credit could have been given in any suit on the demand in litigation.

The appellant further contends that it was necessary to plead the Dakota judgment and proceedings, in order to show that

the Montana administrator, the defendant here is estopped from disputing the claim sued on by reason of his having taken part, as alleged in paragraph 21, stricken from the complaint, in defending said Dakota suit in the name of Harvey Harris, administrator there. We think this contention cannot be maintained. There was no privity between these two administrators. This defendant had no authority to act or bind the estate outside of the jurisdiction of his own state or appointment." (See *Johnson* v. *Powers*, 139 U. S. 156, and authorities cited therein. 1 Wœrner's American Law of Administration, § 160, p. 362.)

Appellant contends that, whatever force and effect the court might give the Dakota judgment and proceedings set out in the complaint, and the action of the court therein, still he has a cause of action independent thereof, by reason of the alleged new promise in writing of Leighton in his lifetime, pleaded in paragraph 22 of the complaint, which was stricken out by the court. After striking out said parts of the complaint, the court sustained defendant's demurrer thereto on the ground that the demand sued on was barred by the statute of limitations. This action of the court is especially attacked and complained of by appellant, as he says the court, by striking out paragraph 22 of the complaint, left the same demurrable, as said paragraph set up, as claimed, a new promise, made by Leighton in his lifetime, to pay the demand sued on. While, perhaps, it would have been more appropriate to attack this particular paragraph of the complaint by demurrer, yet whether prejudicial error was committed by the court in its action we will consider later on. Does paragraph ·22 of the complaint contain and plead such a new promise to pay the demand sued on as will relieve it from the bar of the statute of limitations? It is conceded that the demand is barred unless the bar is removed by the new promise of Leighton in his lifetime, set out in said paragraph 22. We will consider this question as if said paragraph had not been stricken from the complaint. The written new promise of Leighton relied on to remove the bar of the statute of limitations in this case is as follows:

"MILES CITY, Montana, 7/21, 1888.
*"J. D. Biggert, Pittsburg,*

"DEAR SIR: Nothing from you yet. If I don't hear soon, I will go to Bismarck, and tender amt. due, as I don't want to be bothered any more. Whatever is due is ready, as it has been for the last 7 years, whenever I can safely pay either you or Braithwaite.       Yours truly,

"J. LEIGHTON."

The appellant relies on two other written instruments, signed by said Leighton, to relieve this demand from the bar of said statute. These instruments are as follows:

"MILES CITY, Montana, 6/27, 1888.
*"John Biggert, Pittsburg,*

"DEAR SIR: Have just returned, and have been looking over matters. I am not satisfied about the settlement of *Eclipse* trip. Please write me your understanding of it. Also, if I settle with your folks, if they will see me clear of Braithwaite, &c. Write me at once.       Yours truly,

"J. LEIGHTON."

"MILES CITY, Montana, 7/22, 1888.
*"J. D. Biggert, Pittsburg,*

"DEAR SIR: Yours, with check, at hand. I am anxious to see Joe better. He came out and figured up books, and saw that we had a loss for 1, and went away satisfied, but we will write him after I get his letter. I cannot wait long for your decision. You know I am very ill, and I must have this thing off my hands. I want to help you in the matter, but the suit has got to be attended to.       Very truly,

"J. LEIGHTON.

"Why don't you write me about your letter of April, '82?"

These last two instruments are referred to as exhibits, and the first instrument is set out in full in said paragraph 22. Said first written instrument or letter is especially relied on by appellant as constituting such an acknowledgment of the demand sued on, and new promise to pay the same, as to take the debt out of the operation of the statute of limitations.

In *Bell* v. *Morrison*, 1 Pet. 352, a case involving the doctrine under discussion, Mr. Justice Story, speaking for the

court, says: "To remove the bar of the statute of limitations by a new promise it must be determinate and unequivocal; and, if the new promise is to be raised by implication of law from an acknowledgment, there must be an unqualified acknowledgment of a subsisting debt which the party is liable and willing to pay."

In *Biddell* v. *Brizzolara*, 56 Cal. 382, the court say: "If there be no express promise, but a promise is to be raised by implication of law from the acknowledgment of the party, such an acknowledgment ought to contain an unqualified and direct admission of a previous subsisting debt, which the party is liable and willing to pay. If there be *accompanying circumstances* which *repel* the promise or intention to pay; if the expressions be equivocal, vague, and undeterminate, leading to no certain conclusion, but at best to probable inferences, which may affect different minds in different ways, we think they ought not to go to a jury as evidence of a new promise to revive the cause of action. Mr. Justice Story, *Bell* v. *Morrison*, 1 Pet. 362." "An acknowledgment of the debt to take the case out of the statute of limitations must be clear and unambiguous, and must recognize and be directed to the particular debt and amount to an unqualified admission that it is due and unpaid." (5 Gen. Dig., U. S., § 526, p. 1399, and authorities there cited.

In *McCormick* v. *Brown*, 36 Cal. 185, 95 Am. Dec. 170, the court say: "The acknowledgment must be a direct, distinct, unqualified admission of the debt which the party is liable and willing to pay."

We think it cannot be contended that the two writings claimed to be acknowledgments and new promises, dated respectively 6/27, 1888, and 7/22, 1888, and set out above, contain any such acknowledgments of this debt, or new promise to pay the same, as to relieve the demand sued on from the bar of the statute. The instrument dated 7/22, 1888, says nothing about this demand. The instrument dated 6/27, 1888, shows that Leighton is not satisfied about the settlement of the *Eclipse* trip, and asks, "If I [Leighton] settle with your folks, if they will see me clear of Braithwaite," etc. If there is any promise in this, is it not conditional? This certainly does

not come within the requirements to take it out of the operation of the statute, even if the instruments were otherwise definite and certain, in which respect it seems fatally defective. Now, as to the first instrument or letter of Leighton, chiefly relied on to take this case out of the statute of limitations, this letter, like the others, is written to one J. D. Biggert, at Pittsburg. In this letter Leighton seems to complain of Biggert's delay. He says if he does not hear soon, he will go to Bismarck, and tender amount due, as he does not want to be bothered any more. Then he says, " Whatever is due is ready, as it has been for 7 years, whenever I can safely pay either you or Braithwaite." Now, what are the legitimate inferences to be drawn from this letter and the others? 1. That Leighton was ill, and was anxious to settle this matter in his lifetime; 2. That he was willing, and had been for seven years, te pay whatever was due from him, when the amount could be ascertained, and he should know to whom he could safely pay such amount. It is very evident that there was a dispute as to what was due, and to whom it was payable. Leighton seemed anxious to pay when these two important matters were settled. His willingness to pay was evidently conditioned upon the ascertainment of the amount due, and when he was made secure in paying either to the parties represented by Biggert or to Braithwaite. It does not appear that either of these things was ever done, or that Leighton's letter and terms therein stated were ever accepted or acted upon in any manner by plaintiff or any other party connected with this matter. These conditions should have been shown to have been performed by plaintiff before he seeks the benefit of the alleged new promise to pay. (*Bell* v. *Morrison*, 1 Pet. 351.) This is not shown to have been done. But plaintiff seems to have disregarded the terms, conditions, and overtures of settlement contained in this alleged new promise, and now, after the death of Leighton, seek to avail himself of the benefits thereof, as if such conditions were immaterial. We think no other conclusion can be fairly reached from a proper construction of all these letters and alleged new promises to pay. In none of these letters is there an unconditional, definite, certain, and unqualified acknowledgment of this demand, or any certain

demand and promise to pay the same. We are therefore of the opinion that these written instruments or letters of Leighton are insufficient to remove the bar of the statute of limitations. So holding, we see no error in the action of the court in holding the complaint bad on demurrer, or that any substantial right of appellant was prejudiced by striking said paragraph 22 from the complaint, as, in our view, the complaint did not, in any event, state facts sufficient to authorize a recovery, for the reason that the demand sued on is barred by the statute of this state.

We are of the opinion that the judgment should be affirmed, and it is so ordered.

*Affirmed.*

HARWOOD and DE WITT, JJ., concur.