PHILENA BLANCHARD

*v.*

ALMIRA WILLIAMSON.

1. CHANCERY JURISDICTION—*remedy at law lost.* No principle of law is better settled, than that where the law affords a remedy, and the party neglects to avail of it, equity will not assist him after his remedy at law has been barred by the Statute of Limitations.

2. SAME—*of claim against an estate.* A court of equity will not assume jurisdiction of a claim against an estate, until the claimant shall have exhibited it and had it allowed in the county court, but, if any reasons that may be deemed sufficient can be assigned why that court can not afford the requisite relief, equity will assist, but not otherwise.

3. CONSIDERATION — *gift.* A promissory note executed and delivered by a party as a gift, is not enforceable against the maker's estate, for want of a valuable consideration to support it. It differs from the case of the delivery of a note or obligation on a third person, which are the subjects of gifts *inter vivos* or *causa mortis.*

4. ADMINISTRATION—*discharging administrator.* The county court has no legal authority to discharge an administrator before the estate is completely settled, and if it does, the order will be a nullity, and will not prevent a creditor from presenting a claim and having it allowed.

5. LIMITATIONS—*claims against estates.* A claim against an estate not exhibited within two years from the granting of administration, may still be presented and allowed as against any assets not inventoried or accounted for, and this may be done at any time before the debt or claim is barred by the general limitation law, but the allowance will be at the expense of the claimant.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. WEAD & JACK, and Mr. P. H. SANFORD, for the appellant.

Messrs. DOUGLASS & HARVEY, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Appellee exhibited her bill in the circuit court of Knox county, on the sixth day of December, 1872, the object of

which was to compel appellant, who was executrix of Mary Gardner, deceased, to pay her the amount of a certain promissory note, alleged to have been made by the decedent.

It is charged, that a large amount of assets came to the hands of appellant, as executrix, which she failed to cause to be inventoried as the law directs, and it is sought to compel the payment of the alleged indebtedness out of the uninventoried assets.

The record presents a rather singular state of facts. The allegations in the bill are, that on the first day of January, 1857, Mary Gardner, for a valuable consideration, executed to appellee a promissory note for $1000, due in one year after date, with ten per cent interest, until paid, which note, it is alleged, was delivered to her, but afterwards became lost, and its whereabouts unknown to her, until within the year previous to the filing of the bill. It is further charged, in the bill, that Mary Gardner made a will, by which, after directing the payment of all her just debts, she devised the residue of her estate.

The proof shows, that Mary Gardner was the mother of appellant and appellee; that they both, for many years previous and at the time of her death, resided with her as members of her family. Her death occurred in June, 1866, and in July following her will was duly admitted to probate in the proper office.

Appellee states, in her testimony, she had no knowledge of the existence of the note until some time within the year prior to filing her bill. It was then, by mere accident, discovered among some notes which were regarded as of no value. She states she had two on which she never expected to get anything; that she kept them in a pocket-book, among some paper rags in the lumber room. Her mother, she says, had access to it, and knew where she kept the pocket-book. When about to start to California, she placed it in the lid of her trunk. When packing her trunk to return to this State, she saw what she supposed were the two worthless notes, but on

opening one of the papers found it was the note in contro-
versy.   Her mother, subsequent to the date of this note, had
made her valuable gifts of real estate and other property,
and although she had frequent private conversations with
appellee about what she would receive of her property after
her death, her mother never mentioned the existence of the ·
note.   It seems certain, from the evidence, the note is in the
handwriting of decedent, but there is no consideration shown,
and, indeed, the facts show conclusively there was no valu-
able consideration whatever.   Nor is it shown there was any
delivery to appellee, unless we infer what is not proved : that
the deceased herself placed the note among the old papers of
appellee, for her benefit.

The right to the relief sought seems to be predicated upon
two grounds :

*First*—The executrix, at the expiration of two years from
the granting of letters, having reported there were no claims
established against the estate of the testatrix, was discharged,
by order of the county court, from further administration.

*Second*—A large amount of assets had come to the hands
of the executrix which she had failed to inventory.

It is not perceived how a court of equity can obtain juris-
diction for either cause suggested.   The most favorable con-
sideration appellee can claim is, that the facts, as alleged in
her bill, shall be taken as true ; and conceding that the note,
as there stated, was executed for a valuable consideration,
and delivered to her, but subsequently lost, this fact would
afford no excuse for not presenting her claim within two
years for allowance against the estate, so that, if just, it could
have been paid in due course of administration.   The note
was merely the evidence of the indebtedness, and the claim
could have been presented for the original consideration.
Appellee can not be heard to say she did not know of the ex-
istence of the note, for she alleges, in positive terms, it was
given for a valuable consideration and delivered to her, but
afterwards lost.   She is bound by the allegations of her bill.

No principle of law is better settled, than, where the law affords a remedy, and the party neglects to avail of it, equity will not assist him after his rights have been barred by the Statute of Limitations.

Nor can the order of the county court, discharging the executrix from further administration of the estate, excuse the presentation of the claim for allowance. Such an order is a nullity, until the estate had been administered according to law. Had it appeared the executrix had refused to act, or had been guilty of improper conduct, the court could rightfully remove her and appoint one that would act; but there was no ground of complaint alleged against her. The order was simply to discharge her from further administration of the estate. The statute has conferred no power upon the county court to make such an order, until the estate has been duly administered, and it could not operate to affect the rights of creditors.

It is true, the statute requires claims of the class to which appellee's belongs shall be exhibited within two years from the granting of letters, or be forever barred, unless the creditor shall discover other estate not inventoried or accounted for, saving, however, to certain persons named and to persons "beyond seas," the term of two years, after their respective disabilities are removed, in which to present their claims.

Appellee was clearly within one of the saving clauses of the statute. It is alleged in the bill, and the proof amply sustains the allegation, there was property sufficient to pay her claim, that was never inventoried or accounted for.

No reason is shown why she did not present her claim and have it allowed under the provisions of the statute. The law has prescribed no period in which a party can present his claim against an estate. It is apprehended he might do it at any time before the debt itself is barred by the Statute of Limitations, but after the lapse of two years after the granting of letters it is to be at the expense of the claimant. The bar is as to the payment of claims out of effects previously

inventoried, but there does not seem to be any bar as to the payment of claims out of property not inventoried or accounted for, other than what is to be found in the general limitation laws.

It is an elementary principle, that where the law affords a party an adequate remedy, he must pursue it. The facts in this case afford no reason for a departure from this well established rule. The claimant was under no disabilities, and there was nothing to prevent her from presenting her claim against the estate, and, if just, in procuring its allowance. She must first pursue the remedy given by the statute.

The case of *Harris* v. *Douglas,* 64 Ill. 466, is conclusive on this point. It was there said: "Ordinarily the claimant has a complete and ample remedy at law, and such party will be required to pursue it. A party may not, in the first instance, file a bill to enforce the payment of his claim against the estate. A court of equity will not assume jurisdiction, except in extraordinary cases, where the remedy afforded by the statute is inadequate. It is for the very plain reason, the statute has pointed out a very different mode, and the party must pursue the remedy provided by law."

The law may now be regarded as settled, in this State, at least, a court of equity will not assume jurisdiction until the claimant shall have exhibited his claim and had it allowed in the county court, and then, if any special reasons that may be deemed sufficient can be assigned why that court can not afford the requisite relief, equity will assist him, but not otherwise. *Armstrong* v. *Cooper,* 11 Ill. 561 ; *Freeland, Exr.* v. *Dazey,* 25 Ill. 296.

But if we consider the case as made by the proof, which is widely different from the case stated in the bill, there is no ground for relief, either at law or in equity. Conceding all that appellee claims, it was only a promise to make a gift. It is not pretended there ever was any valuable consideration for the note. If the decedent placed the note where it was subsequently found, there is no evidence as to her intentions.

The evidence is silent upon this question. Even if it was originally intended for the benefit of the payee, the maker may have retracted that purpose. There exists the *locus penitentiæ* so long as the gift is incomplete, and the evidence warrants the presumption it may have been withdrawn in this case.

It is not claimed the note is a *donatio causa mortis,* but it is insisted its validity may be maintained on the ground it is a gift *inter vivos.* We can not concur in this view. Personal chattels, bonds or choses in action may be the subject of disposal as gifts, either *inter vivos* or *causa mortis,* but it is indispensable, in every instance, the thing intended to pass should be actually delivered. A gift is not perfect until a delivery takes place. A parol promise to pay money is no more a ground of action than a promise to deliver a chattel as a gift. *Pearson* v. *Pearson,* 7 Johns. Chy. 26.

If a party delivers his own promissory note as a gift, it is but a promise to pay a sum certain at a future day, and we are not aware such a promise can be enforced, either at law or in equity. It could not be enforced against the maker in his lifetime, and his representatives could defend against it on the ground there was no consideration. 2 Parsons on Notes and Bills, 54, and notes; 2 Kent Com. 438.

The case of *Crum* v. *Thornley,* 47 Ill. 192, cited by counsel, is not in conflict with the views we have here expressed, but in entire harmony. The gift, in that case, consisted of bonds and notes of third parties, and were actually delivered to the donee. The authorities all agree that such a gift may be maintained.

For the reasons indicated, the decree is reversed and the bill dismissed.

*Decree reversed.*

Mr. CHIEF JUSTICE BREESE dissents.

Mr. JUSTICE CRAIG, having been of counsel in the court below, took no part in the consideration of this cause.