## *In re* STEVENS' ESTATE.

### BEDELL *v.* CLARK.

1. ESTATES OF DECEDENTS — EXECUTORS AND ADMINISTRATORS — ANCILLARY ADMINISTRATION—DOMICILE—FINAL ACCOUNT.

    Upon the hearing of the final account of executors appointed in ancillary proceedings after the probate of a will of decedent in Florida, the question of decedent's domicile is not at issue.

2. SAME—STATUTES—WILLS.

    3 Comp. Laws, § 9284, recognizing a rule of comity, requires the court, after taking care of domestic claims, to distribute the estate in pursuance of the terms of testator's will.

3. SAME—PROBATE COURTS.

    Powers of executors are limited to the State or country where administration is in progress, the principal and ancillary administration being independent of each other: but the court, having supervision of an ancillary executor, may, in its discretion, distribute the estate to the resident heirs, or remit the same to the State of the principal administration for distribution.

4. SAME—CONFLICT OF LAWS—ACCOUNTING.

    The place for final accounting and settlement is in the forum of original administration.[1]

5. SAME—WILLS—DEVISES—CONSTRUCTION.

    The construction to be placed upon the will, if any question arises, is to be left with the courts of testator's domicile, in which probate is pending.

6. SAME—ESTOPPEL—PLEADING.

    The executors of an estate are not estopped from asking that the funds be transmitted to the principal forum by reason of a prayer in their final accounting of ancillary proceedings that the court apportion and distribute the estate to the persons entitled thereto.

7. SAME.

    The court, in the exercise of its discretion, properly ordered the

---

[1] The question of the conflict of laws as to construction of wills is treated in a note in 2 L. R. A. (N. S.) 443.

property of the estate transmitted to Florida to await the outcome of litigation there pending in relation to the construction of decedent's will, which provided for the payment of debts, and devised a life estate to one of the beneficiaries, in a portion of the real property in the State of Florida, and in certain other property.

Error to Eaton; Smith, J.   Submitted June 5, 1912. (Docket No. 20.)   Decided July 22, 1912.   Rehearing denied October 7, 1912.

Edwin Clark and Emerson Bedell presented to the probate court for the county of Eaton their final account as executors of the estate of Ann C. Stevens, deceased.   From an order distributing a portion of the estate, Anna Bedell and Mellie Bedell appealed to the circuit court: said executors presented a cross-appeal.   The order of the probate court being reversed as to the distribution of part of the estate, contestants appeal.   Affirmed.

*L. B. Gardner* and *O. J. Hood,* for appellants.

*George Huggett* (*Landis & Fish,* of counsel), for appellees.

STONE, J.   This case is here upon questions arising in the settlement of the estate of Ann C. Stevens, deceased. The findings of the circuit judge so clearly state the questions involved that we quote therefrom, as follows:

"Ann C. Stevens died on the 23d day of April, 1908, at Lake Helen, Volusia county, Florida.   She died, leaving a last will and testament, which was in her own handwriting and in which Emerson Bedell and Edwin Clark were named as coexecutors.   At the time of her death, her domicile was in Volusia county, Florida, and she was seised and possessed of both real and personal property. A part of the personal property consisted of notes against citizens of the State of Michigan, some of which were secured by mortgages on Michigan real estate.

" By her last will and testament, she made numerous specific bequests and devises.   Among these bequests were the following:

" ' I give and bequeath to my brother, Emerson Bedell, my house and lot in Lake Helen, Florida, and all the mill stock I hold there, and all and any other land or lots or property of any form at the time of my death, during his lifetime; then I devise it to go to my heirs, viz., Alice and Ella Powell, Mellie and Anna Bedell, for him to dispose of to them in whatever way that he may deem best for them.'

" This bequest, as I understand the matter, is the only one over which there is any contention.

" Emerson Bedell and Edwin Clark qualified in the State of Florida as coexecutors, and the original will was probated in Volusia county, Florida. Afterwards ancillary administration was taken out in the State of Michigan, based on a certified copy of the probate of the will in Volusia county, Florida. Ancillary letters from the court in Michigan were issued to the same coexecutors. Final accounts were filed under the ancillary administration in the probate court of Eaton county, Michigan, and the final order of distribution was made by the judge of probate, and from two paragraphs of said final decree appeal has been taken to this court.

" The probate judge for Eaton county, after hearing the final account, determined that there was in the hands of the executors under the ancillary administration the sum of $8,970.74.

" Among other things, the probate court made the following order:

" ' It is further ordered that the sum of $4,124.79 in the hands of the executors, derived from personal property held by the deceased in the State of Florida at the time of her death, be paid by the said executors to the executors appointed by the probate court in the State of Florida, and that said sum, less inheritance tax thereon this day determined, be transferred to the principal administration in the State of Florida, there to be held and distributed under the terms of the will of said deceased.'

" From this portion of the order of the probate court, Mellie and Anna Bedell appealed to this court.

" The probate court made a further order, as follows:

" ' It is further ordered that the balance on hand, amounting to $4,845.95, be paid to Alice Powell, Ella Powell, and Mellie Bedell and Anna Bedell, in equal proportions—one-fourth, or the sum of $1,211.48 to each.'

"From this last order, Emerson Bedell and Edwin Clark, as coexecutors of the last will and testament of Ann C. Stevens, deceased, entered their cross-appeal to this court. * * *

"It is my judgment that in a case like this case, as shown by the proofs, if not in all cases, that the ancillary administration has but one duty, and that is to collect the assets of the estate in the State where the ancillary proceedings are had, to pay any and all creditors, if any, in the State of the ancillary administration, and return whatever remains of the estate, after paying creditor claimants and the expense of ancillary administration, to the principal or domiciliary administration, to be disposed of and distributed by the courts of that administration.

"If this position is well taken, it follows, and it is my opinion, that all questions pertaining to the construction or interpretation of the will in question should be left to the courts of the State of Florida, and for that reason I express no opinion on this matter.

"It follows that the order of the probate court for the county of Eaton, in directing the return of the sum of $4,124.79 of the amount in the hands of the executors in the ancillary proceedings be paid over to the executors of the principal administration in Florida, is affirmed, and the appeal of Anna and Mellie Bedell from that portion of the order is dismissed. And that the order of the probate court for the county of Eaton, in directing the distribution of the sum of $4,845.95 to Alice Powell, Ella Powell, Mellie Bedell, and Anna Bedell in equal proportions, one-fourth, or the sum of $1,211.48, to each, is reversed, and the appeal of Emerson Bedell and Edwin Clark, executors of said estate, from that portion of the order is allowed; and that the probate court of Eaton county be directed to enter an order that said sum of $4,845.95 be paid over to the executors of the principal administration in the State of Florida."

The judgment was entered in accordance with the findings.

Counsel for appellants say that by their assignments of error three questions are raised. It is their contention:

*First.* That the statute is mandatory; and upon request of the Michigan legatees for a distribution of the property here the court must distribute it.

*Second.* That the executors are now estopped from asking that the funds be transmitted to the Florida courts.

*Third.* That if the statute is not mandatory, and the executors are not estopped, then whether the funds here shall be distributed here, or transmitted to the Florida courts, is not a question of jurisdiction, but of sound judicial discretion.

At the outset we should have in mind the fact that this was an ancillary administration in this State, and that the trial court found as a fact that Ann C. Stevens died in the State of Florida, and that at the time of her death her domicile was in Volusia county, Fla., upon which finding no error was assigned. It should also be borne in mind that her last will and testament was admitted to probate in that State, and that the principal or domiciliary administration is there. The contention that testatrix had her domicile in Ingham county, Mich., cannot be litigated in this ancillary proceeding.

1. Under the first claim of appellants, it is contended that, in view of the provisions of our statute, neither the probate court, nor the circuit court on appeal, had any authority or jurisdiction to order a transmission of any part of this estate to the domiciliary court of Florida; and that the entire estate must be distributed in this jurisdiction on the demand of any interested party.

Counsel have called attention to the early legislation in this State upon this subject; and they claim that the history of the legislation, since the Revised Statutes of 1838, shows a change in the law and practice. Counsel have quoted only section 22 of chapter 8, pt. 2, tit. 4, of the Revised Statutes of 1838. We think it well to quote both sections 21 and 22, which are as follows:

Section 21: "When administration shall be taken in this State, on the estate of any person who was an inhabitant of any other State or country, his estate found here after payment of his debts, shall be disposed of according to his last will, if he left any duly executed according to the laws of this State; and if there be no such will, his real estate shall descend according to the laws of this

State, and his personal estate shall be distributed and disposed of according to the laws of the country of which he was an inhabitant."

Section 22: "Upon the settlement of such an estate, and after the payment of all debts for which the same is liable in this State, the residue of the personal estate, if any, may be distributed and disposed of in manner aforesaid, by the probate court in which the estate is settled; or it may be transmitted to the executor or administrator, if there be any, in the State or country where the deceased had his domicile, to be there disposed of according to the law of the place, as the court, under the circumstances of the case, shall think best."

By the Revised Statutes of 1846, chap. 68, § 24, the language was changed, and has ever since remained as now found in section 9284, 3 Comp. Laws, and reads as follows:

"When any will shall be allowed, as mentioned in the preceding section, the probate court shall grant letters testamentary, or letters of administration, with the will annexed; and such letters testamentary or letters of administration shall extend to all the estate of the testator in this State; and such estate, after payment of his just debts and expenses of administration, shall be disposed of according to such will, so far as such will may operate upon it; and the residue shall be disposed of as is provided by law in cases of estates in this State, belonging to persons who are inhabitants of any other State or country."

We cannot agree with the contention of counsel for appellants that the law has in any material sense been changed by this last enactment, which has been in force so many years in this State.

The statute of 1838, consisting of the two sections above cited, constituted what might be termed a complete code for the settlement of estates in this State of persons who were residents of some other State or country, and covered both testate and intestate estates.

The statute of 1846, above quoted, deals with testate estates only—the admission of foreign wills. It appears by section 21, first above quoted, that "his estate found

here after payment of his debts shall be disposed of according to his last will." Our present statute provides:

"And such estate, after payment of his just debts and expenses of administration, shall be disposed of according to such will, so far as such will may operate upon it."

Here we have a recognition of the doctrine of comity between the States, and that the distribution of such estates must be according to the will of the party. This record distinctly shows that in their claim for appeal from the probate court appellants recognized the fact that the sum of $4,124.79, in the hands of the executors here, was derived from personal property held by said deceased in the State of Florida at the time of her death.

Under the section of the statute now in force, this court has held that the estate must be disposed of in accordance with the directions contained in the will. *Ford* v. *Ford*, 80 Mich. 42 (44 N. W. 1057).

We have examined the last-named case with care, because it is cited by counsel for appellants in support of their contention. We do not think it supports it; nor do we think that their position finds any support in *Re Corning's Estate*, 159 Mich. 474 (124 N. W. 514).

The practice of our probate courts is well expressed in Cheever's Probate Law (3d Ed.), at page 343, where that author said:

"The power and authority of an executor or admistrator is limited to the State or country where it is granted, with but few exceptions. Where there is estate belonging to the deceased in another State, there may be ancillary administration granted in that State. The principal administration and ancillary administration are entirely independent of each other. All the claims established under the ancillary administration should be paid before any of the estate is transferred to the principal administration, and it is entirely within the discretion of the probate court granting ancillary administration to determine whether the residue of the estate shall be distributed among the heirs there, or remitted to the principal administration for distribution "— citing *Mackey* v. *Coxe*, 18 How. (U. S.) 100, and many other cases.

The place for final accounting and settlement is in the forum of original administration. This is the doctrine supported by a large number of authorities cited in 1 Chatterton's Probate Law, under title " Ancillary Administration," section 1018, of the last edition.

It may be stated that under our present statute the practice has been uniform and in harmony with the law of comity existing between the States, or a State and any other country, in all cases where the will operates upon the property, leaving the construction to be placed upon such will, where any question arises upon that subject, to the domiciliary court.

2. The second proposition presented in behalf of appellants is that the executors are estopped from asking that the funds be transmitted to the Florida court. This we understand to be based upon the final account and report of the executors in the Michigan probate court. We cannot agree with counsel in this contention upon this subject. The mere fact that the executors asked for an order apportioning, assigning, and distributing the residue of the estate to the persons entitled thereto could not confer jurisdiction upon the court to go beyond its powers in the ancillary administration. It may be said that the court made a much broader order of distribution than was warranted under the law. That question is not before us, and such course would be no justification for making a further unwarranted order. We do not think that the doctrine of estoppel can be invoked upon this subject. The proof in this case warranting the transmission of this fund lies in the provisions of the will itself, in that it is subject to all debts of the estate, and that all the property of the deceased, of any kind, that she had in Florida at the time of her death was specifically devised and bequeathed to Emerson Bedell during his life. This appears upon the face of this will. The construction to be placed upon this will is a question to be settled in the State of Florida, and not here. *In re Corning's Estate, supra.*

It appears in this record, by statement of appellants' counsel, that a bill has been filed on the chancery side of the court in Florida to dispose of this very question. Certainly it is not here for disposition in this ancillary proceeding.

3. Appellants' third proposition is that this is a question, not of jurisdiction, but of sound judicial discretion, even if the statute is not mandatory, as they contend. We think the correct rule is as follows:

"Where there are two administrators of a single estate, one in the place of the domicile of the testator or intestate and the other in a foreign jurisdiction, the question whether the courts of the latter will decree distribution of the assets collected under the ancillary administration, or remit them to the jurisdiction of the domicile, is not a question of jurisdiction, but of judicial discretion, depending upon the circumstances of the particular case." *Matter of Accounting of Hughes*, 95 N. Y. 55.

See, also, *Harvey* v. *Richard*, 1 Mason (U. S.), 381, Fed. Cas. No. 6184. This was the rule of the United States court in Massachusetts, which was in harmony with that adopted by the State courts. It also became the rule of the courts in New York, as shown by *Parsons* v. *Lyman*, 20 N. Y. 103. This is a very lengthy and able case, reviewing the authorities, and it accords with the general rule. The material facts in the instant case are so similar in effect to those of *Parsons* v. *Lyman* that the latter cannot be distinguished therefrom in principle.

*Matter of Accounting of Hughes*, 95 N. Y. 55, deals with an intestate estate. There were no residuary legatees, as there are in this case, and no question about creditors. There was there no life estate at the domicile, or trust created; and, in fact, it will be seen that the court distinguished the case from that of *Parsons* v. *Lyman*.

In *Dent's Appeal*, 22 Pa. 514, the facts were very different from the instant case. It illustrates the doctrine that we have already stated, that the matter should be left to the judicial discretion, dependent upon the circumstances of the particular case.

, We conclude by saying that we think the circuit judge reached the correct conclusion, under all the circumstances of the case.

The judgment of the circuit court is affirmed, with costs of this court to be taxed against appellants.

, MOORE, C. J., and STEERE, McALVAY, BROOKE, OSTRANDER, and BIRD, JJ., concurred. BLAIR, J., did not sit.