This is an appeal from an order directing distribution in the matter of the estate of Sarah P. Livingston, deceased.
In 1890 the decedent, then a resident of Peoria, Illinois, made a will, in which, subject to the payment of her funeral expenses and indebtedness, she gave, devised and bequeathed to each of two corporations, the Board of Foreign Missions of the Presbyterian Church in the United States of America and the American Baptist Missionary Union, and to their successors and assigns forever, an undivided one-half of all the estate, real, personal and mixed, of which she might die seized or possessed, "the same to be used by said corporations respectively for the sole purpose of sending missionaries to teach or preach the Gospel to the Heathen in heathen lands." She ordered and directed her executor to sell, at public or private sale, at such time or times and upon such terms as he might deem for the best interests of the estate, any and all of her real or personal property, and expressly authorized and empowered him to execute all necessary conveyances or assignments which might be necessary to pass title to the real or personal estate sold, directing that all proceeds of such sales and all moneys due or owing the estate "be collected and paid over by my executor without unnecessary delay." She named as her executor the pastor of the First Baptist Church in Peoria, Illinois. Some time later she established her residence in California. On May 24, 1918, she executed to the University of Southern California, during the "Jubilee Campaign" in the interest of that institution, a promissory note reading: "In consideration of my interest in Christian education and in consideration of others toward the raising of a Million Dollars for endowment and equipment for the University, I hereby subscribe and will pay to the University of Southern California, at Los Angeles, California, the sum of Two Hundred Thousand Dollars ($200,000) on the following terms and conditions: * * * 2. This subscription shall be *Page 587 
due and payable one (1) day after my death, and out of my estate." Other provisions of the will are not material to this inquiry.
Miss Livingston died in Los Angeles in May, 1923, leaving estate in California, Montana, and several other states. Prior to her death the executor named in her will departed this life. In due course Frank Bryson, public administrator of Los Angeles county, California, was appointed administrator of her estate, with the will annexed. We shall refer to him occasionally as the California administrator. He caused an authenticated copy of the will to be admitted to probate in this state, and upon his petition the court appointed B. Kesselheim administrator with the will annexed in Montana.
The Montana administrator duly returned an inventory and gave notice to creditors. Time for the presentation of claims expired, none having been presented to him. Thereafter, on its own motion, the district court of Dawson county, which had jurisdiction of the estate in Montana, made an order directing Kesselheim as administrator to present his final account together with a petition for distribution. The administrator complied with the court's order. Thereafter the court made an order directing the administrator to show cause why an order of final distribution of the estate in Montana should not be made. In consequence of this order, the California administrator and the University of Southern California filed answers, and the devisees or legatees named in the will, referred to hereafter as the beneficiaries, filed objections. From the answers it appears that a claim based upon the note mentioned above was presented by the university to the California administrator who disallowed it; that a suit was thereupon commenced by the university in the superior court, resulting in a judgment in its favor; that upon the insistence of the beneficiaries, who agreed to pay the costs, an appeal was taken to the district court of appeals, (University of SouthernCalifornia v. Bryson, 103 Cal.App. 39, 283 P. 949) and from that court to the supreme court of California, both courts affirming the judgment of the superior court. That *Page 588 
after the superior court had allowed the claim, an agreement was made between Bryson, administrator, as party of the first part, and the beneficiaries, as parties of the second part, which, after reciting the facts leading up to the judgment, set forth that the beneficiaries were anxious to have an appeal taken to the supreme court of California. It was agreed, inter alia, "that any decision of the supreme court of the state of California which may be rendered in connection with said appeal shall be deemed, and that the same shall be determinative, of all rights of the University of Southern California upon said claims as against the party of the first part herein as administrator of said estate, and as against said estate, and that in event the judgment appealed from in said cause No. 150287 shall be affirmed, the parties of the second part herein will not file any contest against the allowance or payment of said claim after the final determination of said appeal, or further litigate the validity or contest the payment of said claim." Further, "that this agreement is expressly made for the benefit of all persons in favor of whom claims have been heretofore allowed against the estate of said Sarah P. Livingston, and also for the benefit of any and all persons in whose favor claims may be hereafter allowed against said estate."
The answers allege that there is not sufficient property in the estate within the state of California out of which to pay the claim, and pray that after the payment of all expenses of administration, together with all claims which have been filed with the Montana administrator, he be required to reduce to cash all of the property within this state and to transmit the residue to the California administrator.
The beneficiaries moved to strike out these portions of the answers which relate to the claim of the university and to the judgment. They objected to the "Petition for Distribution, Order of Sale of Real Estate and Delivery of the Proceeds Thereof," to Bryson, as administrator, or the University of Southern California, and prayed that the estate within Montana be distributed to themselves. *Page 589 
A hearing was had embracing the entire subject matter as presented by the pleadings. The evidence showed the amount of property belonging to decedent's estate in the various states. The court took the matter under advisement and in due time rendered its decision. It denied the motion of the beneficiaries to strike out portions of the answers, made an order fixing the inheritance tax, approved the accounts of the Montana administrator, and ordered him to sell all of the real estate belonging to this estate within the state of Montana without any unnecessary delay in the mode and manner provided by law, and to make due returns as to each of such sales to the court; and ordered that the residue of the estate, after the payment of the inheritance taxes and expenses of administration, be turned over to the California administrator. From this order the beneficiaries have appealed.
The court's order contains its findings, with an excellent discussion of the facts and the law applicable thereto. The court was of the opinion that the evidence adduced shows conclusively that at the time of her death Miss Livingston was a resident of California, and her estate there is the domiciliary one, "the Montana estate being ancillary or subservient to it"; that the domiciliary estate is insolvent, and, if the net proceeds of the Montana estate be remitted to the California administrator, there still will not be sufficient funds with which to pay in full the claims which have been duly proven against the estate in California; that none of the beneficiaries reside within Montana and there is property in this state in excess of that required to pay all the legal charges here.
The decisive question before this court is, Should the[1] property within the state of Montana, after the payment of the legal charges against it, be distributed to the beneficiaries, or should the residue be reduced to cash and the net proceeds be remitted to the domiciliary administrator in California?
Section 10329, Revised Codes of 1921, provides: "Upon application for distribution, after final settlement of the accounts of administration, if the decedent was a nonresident of this state, leaving a will which has been duly proved or allowed *Page 590 
in the state of his residence, and an authenticated copy thereof has been admitted to probate in this state, and it is necessary, in order that the estate, or any part thereof, may be distributed according to the will, that the estate in this state should be delivered to the executor or administrator in the state or place of his residence, the court or judge may order such delivery to be made, and, if necessary, order a sale of the real estate, and a like delivery of the proceeds. The delivery, in accordance with the order of the court or judge, is a full discharge of the executor or administrator with the will annexed, in this state, in relation to all property embraced in such order, which, unless reversed on appeal, binds and concludes all parties in interest. Sales of real estate, ordered by virtue of this section, must be made in the same manner as other sales of real estate of decedents by order of the court or judge."
The applicability of this statute to the fact conditions is the subject of strenuous debate. Counsel for the beneficiaries say there is no reason why the Montana property should be sold and the proceeds sent to the domiciliary administrator, because no claims against the estate were presented to the Montana administrator, and none can be; that all such, including the claim of the university, are barred by the statutes of nonclaim (secs. 10173, 10179, Rev. Codes 1921); and any evidence offered in connection with the university's claim is irrelevant. On the other hand, counsel for the California administrator and for the university, admitting that the university's claim was not filed with the Montana administrator, and the time for filing claims has expired, contend that the statutes of nonclaim have no application to the conditions presented, and assert that their purpose in introducing the evidence proffered by them was to show that the domiciliary estate is insolvent, and that therefore the residue of the estate in the hands of the ancillary administrator should be delivered over to the domiciliary administrator in order that the decedent's debts be paid. *Page 591 
We hold that the statutes of nonclaim are not here involved. This is not an attempt to prove a claim in Montana. (Dow v.Lillie, 26 N.D. 512, L.R.A. 1915D, 754, 144 N.W. 1082; Borer
v. Chapman, 119 U.S. 587, 30 L.Ed. 532, 7 Sup. Ct. Rep. 342.)
But it is argued that, not having presented the claim here, no[2] evidence with respect to it can be received. Counsel for the beneficiaries stress the case of Braithwaite v. Harvey,14 Mont. 208, 43 Am. St. Rep. 625, 27 L.R.A. 101, 36 P. 38, 41, in which this court held that "a judgment recovered against the administrator of a deceased person in one state is no evidence of debt in a subsequent suit by the same plaintiff in another state, either against an administrator, whether the same or a different person appointed there, or against any other person having assets of the deceased," citing authorities. Indubitably, such a judgment has no extraterritorial effect. It is binding in the state where rendered only. "The judgment is against the person of the administrator that he shall pay the debt of the intestate out of the funds committed to his care. If there be another administrator in another state, liable to pay the same debt, he may be subjected to a like judgment upon the same demand, but the assets in his hands cannot be affected by a judgment to which he is personally a stranger. The laws and courts of a state can only affect persons and things within their jurisdiction." (Braithwaite v. Harvey, supra.
Lefebure v. Baker, 69 Mont. 193, 220 P. 1111, was a case wherein the administrators of Lefebure's estate in Iowa attempted to maintain a suit in this state, based upon a promissory note belonging to the estate, against persons in Montana. We pointed out that "it was a fundamental rule of common law that the authority of an executor or administrator did not extend beyond the territorial limits of the state or country in which he was appointed" (citing authorities), and that the rule has been reduced to statutory form in this state by the provisions of section 10563, Revised Codes of 1921: "The effect of a judicial record of a sister state is the same in this *Page 592 
state as in the state where it was made, except that it can only be enforced here by an action or special proceeding, and except, also, that the authority of a guardian or committee, or of an executor or administrator, does not extend beyond the jurisdiction of the government under which he was invested with his authority."
We are in full accord with these cases, but they have no controlling force here. Neither the university nor Bryson, the domiciliary administrator, is attempting to maintain an action against the Montana administrator. Their attempt, at the most, is to show the condition of the domiciliary estate, and that it is insolvent; that a provision of the will of the testatrix has not been complied with — her debts have not been paid. The debts must be paid before the beneficiaries under the will are entitled to[3] anything. "Under the law upon the subject, which prevails over the whole Union, all the property of a decedent, including his lands, except a homestead and other exemptions, is subject to the payment of his debts, and is assets for that purpose." (Inre Gable's Estate, 79 Iowa, 178, 9 L.R.A. 218, 44 N.W. 352, 353;Wiggins v. Mayer, 57 App. D.C. 293, 22 F.2d 869.)
The great weight of authority sustains the rule, usually called the rule of comity, that the courts of a state other than that of decedent's residence, having control over an estate, will order the ancillary administrator, after the completion of his administration, to deliver the residue to the domiciliary administrator. (11 R.C.L. 441.) That Montana is in accord with that policy was intimated in State ex rel. Floyd v. DistrictCourt, 41 Mont. 357, 109 P. 438, 440, which was a proceeding respecting the collection of an inheritance tax from the estate of a nonresident decedent. The court said that, while, under the requirement contained in sections 7675, Revised Codes of 1907, now section 10329, Revised Codes of 1921, "the power to order distribution * * * may be assumed to have been taken from the state court, and it must, when the estate is ready for distribution, order its delivery to the executor or administrator * * * in the jurisdiction of *Page 593 
the decedent's residence, this does not relieve the estate from the burden of the tax, nor impair the power of the court to collect it."
In In re Gable's Estate, supra, the supreme court said: "If[4] sufficient assets for the payment of debts are not found under the control of the principal administration, and there is under the control of the ancillary administration money assets in excess of the debts proved therein, justice would forbid that such administration should disregard the demands of right, and distribute the assets to the heirs; but, as it has not before it the claims of all the creditors, some having been established in the principal administration proceedings, justice demands that the ancillary administration, in response to the demands of comity, transmit the money assets to the principal administrator. (Story, Confl. Law, secs. 513, 518; Whart. Confl. Law, secs. 619, 620; 3 Williams, Ex'rs, 1763, 1767, and notes; 1 Williams' Ex'rs, 424; Goodall v. Marshall, 11 N.H. 88 [35 Am. Dec. 472]; Low
v. Bartlett, 8 Allen [Mass.] 259; Fay v. Haven, 3 Metc. [Mass.] 109; Davis v. Estey, 8 Pick. [Mass.] 475." (And seeIn re Stevens' Estate, 171 Mich. 486, 137 N.W. 627; In reEstate of Sanford, Deceased, 188 Iowa, 833, 175 N.W. 506; Dow
v. Lillie, supra; Childress v. Bennett, 10 Ala. 751, 44 Am. Dec. 503; In re Apple's Estate, 66 Cal. 432, 6 P. 7; Lewis
v. Adams, (Cal. Sup.) 8 P. 619; McCully v. Cooper,114 Cal. 258, par. 5, 55 Am. St. Rep. 66, 35 L.R.A. 492, 46 P. 82.)
How is the condition of the domiciliary estate to be shown in the state where the ancillary administration is pending if it is not permissible to show that creditors' claims, and even judgments against the administrator, have been established in the domiciliary estate? The answer is, of course, that such facts can be shown, otherwise the doctrine last discussed would be unenforceable and meaningless. This demonstrates that the rule announced in Braithwaite v. Harvey and Lefebure v. Baker, supra, does not militate against the right of the domiciliary administrator to show the existence of approved claims, or a judgment, against the estate in the state of the *Page 594 
residence of the testatrix, for the purpose of showing the condition of the estate there.
In the matter before us no attempt is made by the university, or the California administrator, to enforce the California judgment in this state. Bryson is not attempting to exercise any authority here. The administration in Montana is independent of that of California, but it is nevertheless a part of the administration of the estate of Sarah P. Livingston, deceased.
As the statute of nonclaim does not apply, it was not necessary for the university to present its claim to the Montana administrator. (Borer v. Chapman, supra; Dow v. Lillie, supra.)
There is some divergence in the authorities respecting the payment of the creditors of an insolvent estate (whether the duty lies wholly with the domiciliary administrator, or with the ancillary administrator as to creditors within his own jurisdiction), but the question does not arise here, as there are no Montana creditors.
As the trial court observed: "The will of testatrix directs that her debts be paid before any property is distributed to the legatees thereunder. There is no property to distribute until the debts are paid. The gift to the University is a debt. There are no creditors within the state of Montana. The only means of giving effect to the direction of the testatrix is to transfer the residue of the estate to the administrator of the domicile. The court is of the opinion, therefore, that, under the facts disclosed here, the property within the state of Montana belonging to this estate ought to be reduced to cash, and after the payment of all legal charges, the residue of the estate should be turned over to the domiciliary administrator."
The court was right in ordering the real estate converted into[5] money. In fact, equitable conversion took place when the testatrix died. "When a will directs the conversion of real property into money, such property and all its proceeds *Page 595 
must be deemed personal property from the time of the testator's death." (Sec. 7037, Rev. Codes 1921.)
When the provisions of the will of the testatrix are read together it is plain that she desired her property converted into money with all reasonable expedition so that her purpose might be carried into effect speedily. She orders her executor to sell at private or public sale, subject to his discretion, any and all of her real or personal estate, giving him ample power to execute the proper instruments of conveyance, and she further directs that "all proceeds of such sales and all moneys that may be or become due and owing" to her or her estate be collected and paid over by her executor without unnecessary delay. The doctrine of equitable conversion applies, and therefore her real estate should be treated as personalty. (Darlington v. Darlington,160 Pa. 65, 28 A. 503; Hanson v. Hanson, 149 Iowa, 82,127 N.W. 1032; In re Sanford's Estate, supra; Buckner v. Carr,302 Ill. 378, 134 N.E. 760; Knight v. Gregory, 333 Ill. 643,165 N.E. 208; Grove v. Willard, 280 Ill. 247, 117 N.E. 489.)
The Montana administrator has ample power to proceed to sell[6] without the court order; he has the same power as the executor would have had. "Administrators with the will annexed have the same authority over estates which executors named in the will would have, and their acts are as effectual for all purposes." (Sec. 10063, Rev. Codes 1921; Kidwell v.Brummagim, 32 Cal. 437.)
The order is affirmed.
ASSOCIATE JUSTICES GALEN, FORD, ANGSTMAN and MATTHEWS concur. *Page 596