(No. 22652.—

BERNARD KELLY, Admr. *et al.* Appellees, *vs.* ISAAC WALTON DYER *et al.* Appellants.

*Opinion filed December 20, 1934—Rehearing denied Feb. 7, 1935.*

Todd, Morgan, Pendarvis & Arber, for appellants.

Phillips & Kitchell, George W. Hunt, and Theodore C. Baer, for appellees.

Mr. Justice Farthing delivered the opinion of the court:

This is an appeal from a decree rendered by the circuit court of Peoria county. Sarah P. Livingston, a resident of California, died testate on May 25, 1923. Frank Bryson was appointed administrator with the will annexed by the superior court of Los Angeles county in that State, and Bernard Kelly later was appointed by the probate court of Peoria county administrator with the will annexed in the ancillary administration of her estate in Illinois. They filed their bill in chancery in the circuit court of Peoria county and asked that the will be construed and that a trustee be named to exercise the power of sale contained in the second clause of the will. The executor named, the Rev. D. D. Odell, had pre-deceased the testatrix. The material parts of the will are:

"*First*—Subject to the payment of my funeral expenses and indebtedness, I give, devise and bequeath to each of

the corporations hereinafter named to-wit: The Board of Foreign Missions of the Presbyterian Church in the United States of America, a corporation, of the State of New York, and to The American Baptist Missionary Union, also a corporation, and to their successors and assigns forever, an undivided one-half of all the estate, real, personal or mixed of which I may die seized or possessed, or to which I am now or may at any time hereafter in any manner become entitled. The same to be used by said corporations respectively for the sole purpose of sending missionaries to teach or preach the gospel to the heathen in heathen lands.

"*Second*—I order and direct my executor hereinafter named, to sell at public or private sale at such time or times and upon such terms as he may deem for the best interest of my estate, any or all my real or personal estate and expressly authorize and empower him to make, execute, acknowledge and deliver any and all deeds of conveyance or assignment that may be necessary to pass the title to the real or personal estate by him sold. And I further direct that all proceeds of such sales and all moneys that may be, or become due and owing to me or my estate, be collected and paid over by my said executor without unnecessary delay, and I further authorize and empower my said executor to compromise, adjust, settle, release and discharge, as in his judgment he may deem proper and for the best interest of my estate, any and all debts, claims or demands whatsoever that may be or become due or owing to me or my estate.

"*Third*—I hereby appoint the Rev. D. D. Odell, at present pastor of the First Baptist Church of Peoria, Illinois, sole executor of this my last will and testament."

The will was admitted to probate and entered of record in Los Angeles county, California, June 17, 1924. An authenticated copy was presented to the probate court of Peoria county, and on December 16, 1925, the will was

admitted to record there. The time has passed in both States for filing a suit to contest the will. The Illinois administrator filed an inventory of the real estate in question on December 22, 1925. The deceased had no other property whatever in this State. An adjustment day was fixed in accordance with the statute, but no claims were ever filed against the estate in Illinois and the time for filing claims has long since passed.

Sarah P. Livingston left as her only heirs-at-law, Isaac Walton Dyer, Mary D. Markham and Katie Porter, who were also named as defendants in the bill. The appellants the Board of Foreign Missions of the Presbyterian Church in the United States of America and the American Baptist Foreign Mission Society, both of which are New York corporations, are the only persons who may take under the will. The American Baptist Foreign Mission Society is the successor to the American Baptist Missionary Union.

Although he was the domiciliary administrator, Bryson collected rent from the Illinois real estate from September 1, 1923, to August 1, 1930, in the amount of $16,750. From and after July 1, 1930, the tenants of one piece of real estate, and from and after September 1, 1930, the tenants of the other tract, deposited their rent for the respective premises in two banks in Peoria, to abide the outcome of this suit. Out of the rents collected Bryson paid taxes on the Illinois real estate amounting to $522.28, an administrator's fee of $400 to Bernard Kelly, a fee of $1500 to Kelly's attorney, $52.88 court costs, and $7470.65 inheritance tax to this State.

The bill of complaint was filed July 19, 1930. It was amended on February 16, 1931. The answer was filed April 23, 1931, and it was amended June 8, 1933. The cause was referred to the master in chancery on May 2, 1931. On March 15, 1932, the University of Southern California was permitted to file an intervening petition. The appellants' demurrer to the petition was overruled.

The university had filed a claim against the estate in the California court. Its claim was based upon a subscription note for $200,000 signed by the testatrix and payable one day after her death. The allowance of this claim was affirmed by the Supreme Court of California in the sum of $240,250.20, on which Bryson has paid $125,000. During the litigation in the California courts the appellants entered into a written agreement by which they promised to pay certain sums as attorneys' fees, etc., and by their amendment to their bill of complaint the appellees alleged that the appellants were estopped to dispute the validity of the claim in this suit. Neither the master nor the chancellor found that such estoppel was created by this agreement. There is no cross-appeal, and the question is therefore not before us.

Ancillary administrations of this estate have been or are being conducted in the States of North Dakota, Montana, Oregon and Washington. The estate's net assets in all six States are insufficient to pay the claims which have been allowed in the domiciliary administration.

By the amendment to their joint and several answer the appellants, the two missionary societies named as devisees in the will, stated that they had elected to accept and retain the Illinois real estate devised to them without having it sold and converted into money. This real estate is of the value of $54,533.32.

The chancellor found that by the first clause of the will, subject to the payment of funeral expenses and her debts, the testatrix devised to each of the appellant corporations an undivided one-half of all her estate, real, personal or mixed, and that by the second clause of her will she directed her executor, Rev. D. D. Odell, to sell all her real estate and personal property and to divide the proceeds, share and share alike, between the appellants after payment of her indebtedness and funeral expenses. The chancellor then found that these two clauses of the will are incon-

sistent; that by the second clause a positive direction is made to convert all of the assets of the estate into cash, and that, since this was the later provision, it controlled. He also found that an equitable conversion of her real estate was made by the testatrix, and, in effect, that the gifts to the appellants were of money rather than of real estate. He found, also, that they acquired no title to her real estate and no right to the rents accruing between the date of her death and the date when final distribution is to be made and the claims allowed in the various States are paid. In other words, the appellants acquired the right to receive the proceeds of the conversion after all claims, in whatever State they were allowed, have been paid in full. He also found that the rents should be mingled with the proceeds of the conversion and be applied toward payment of all claims and costs of administration; that by reason of the death of the Rev. D. D. Odell no person remained with power to convert the real estate into money, and that it was necessary to appoint a trustee to carry out the provisions of the will, and a trustee for that purpose was appointed.

In support of the decree the appellees contend that a creditor whose claim has been allowed in the administration proceedings in the State of the domicile of the deceased may bring a suit in Illinois based upon the judgment allowing the claim, not for the purpose of establishing the claim in this State but to enforce an equitable right to have the assets of the estate distributed among the creditors of the estate, and that the domiciliary administrator may join in such a suit. Stated in another way, the question is, Will a court of chancery in Illinois marshal assets consisting of real property alone and cause it to be converted into money and order the proceeds paid to the domiciliary administrator for the payment of claims allowed in his State and not presented or allowed in Illinois?

Comity between the States requires ancillary administrators to transmit to domiciliary administrators whatever balance remains in their hands out of the personal assets of the estate after payment of debts and claims presented and allowed in the ancillary administration proceedings. The effect of the contention made by the appellees would be to extend this rule to include the proceeds of a sale of real estate and to require such sales to be made even though no claims were presented in the ancillary administration proceedings.

We held in *Smith* v. *Smith*, 174 Ill. 52, 57, that the rule has reference to personal property and its proceeds alone. In that case a bill for partition was filed in the circuit court of Macon county by the heirs of Edward O. Smith against his widow and others. The widow sought to have enforced a claim for "a family allowance" which had been ordered paid to her in the administration proceedings in California, the domicile of Smith at his death. She appealed to the Appellate Court and from that court to this, seeking to reverse the denial of this claim. Ancillary administration proceedings had been had in the county court of Macon county. Dower was assigned and partition of the lands was made in kind among the heirs except as to one piece of real estate in Decatur, which was ordered sold. The assets in California were not sufficient to pay the California creditors. The court was asked to direct that the moneys in the hands of the master and receiver, so far as should be necessary, be applied to payment of the claims allowed by the California court against the estate.

The decision in the *Smith case* is applicable to the case before us. The particular claim there under discussion had been allowed in California but had not been allowed by any court in Illinois. We discussed the case of *McGarvey* v. *Darnall*, 134 Ill. 367, where we held that a judgment against an administrator in one State is not competent testimony to show a right of action against either a domi-

ciliary or ancillary administrator in another State or to affect the assets in such other State. The widow of Smith claimed that the administration in Illinois was merely ancillary, and that after domestic creditors were paid the property should be remitted to the principal or domiciliary administrator for the payment of claims allowed there, including her family allowance. We held that the rule requiring this to be done in an estate applies only to personal property and does not apply to real estate, and that the proceeds of the sale of real estate in a partition suit partake of real property and are not within the rule. We also held in the *Smith case* that the law of the place where real property is situated governs exclusively in respect to the rights of the parties and the modes of transfer and distribution, citing Story on Conflict of Laws, 424, and *Wunderle* v. *Wunderle,* 144 Ill. 40. In answer to the contention that the heirs appeared in the California court and resisted the allowance of the widow's claim for a "family allowance" and that the claim was therefore *res judicata* as to them, we held that the judgment there was only against the estate of the deceased within the jurisdiction of the California court rendering the judgment, and the heirs were not estopped to resist the family-allowance claim in this State. We said that the claim was one which that State might create and enforce within its own jurisdiction for the benefit of its citizens but that the law creating it is local. Such a claim is unknown in this State and came into existence after the death of Smith. It would not be enforcible in Illinois. We then pointed out that the appellant did not pursue her remedy at law, and held that even if her claim were warranted under our statute, it was necessary that she first establish it in a county court of this State before the heirs could be called upon to pay it out of their real estate. A court of chancery was not open to her in the first instance, when her claim had not been reduced to judgment here. We said: "The law is well set-

tled in this State that a court of equity will not ordinarily assume jurisdiction of claims against an estate until the claimant shall have exhibited his claim and had it allowed in the county court, and then, if any special reasons that may be deemed sufficient can be assigned why that court cannot afford the requisite relief, equity will assist him, but not otherwise. (*Harris* v. *Douglas,* 54 Ill. 466.) As was said in *Smith* v. *Goodrich,* 167 Ill. 46: 'This proceeding seeks to reach the proceeds of real estate. It is, in fact, a proceeding against the land itself without a judgment at law and is a resort to chancery on a simple contract indebtedness. This cannot be done where the law provides a remedy.' " In conclusion, in the *Smith case* we held that the heirs were entitled to insist that under our laws there was no authority for the collection of the family-allowance claim out of the real estate of the decedent in Illinois which descended to them as heirs, and that to hold otherwise would be to allow the law of California, no matter how different it might be from our own, to govern the distribution of real estate here. The same result would be reached here if we were to allow the California administrator to compel a sale of Illinois real estate to pay claims allowed only in the courts of California.

Without waiving objections that might be made to the materiality, competency and relevancy of the matter, it was stipulated by the parties that the claim of the University of Southern California was based upon a promissory note for $200,000, payable one day after her death and executed by the testatrix, Sarah P. Livingston. All that this amounted to was an attempt to make a gift to that university by the execution and delivery of the promissory note. A gift *inter vivos* must be completed to be a valid gift, and we have held that this does not result where the gift is attempted to be made by the execution and delivery of a promissory note, and that the donee cannot establish a claim against the estate of the donor based upon such

promissory note for which there was no consideration. (*Blanchard* v. *Williamson,* 70 Ill. 647; *Williams* v. *Forbes,* 114 id. 167; *Richardson* v. *Richardson,* 148 id. 563.) The law of the State of California may permit the allowance of such claim, but that law has no extra-territorial effect. Such a claim, or the judgment allowing it in another State, cannot be collected out of the real property in this State which has descended to heirs or devisees. *Smith* v. *Smith,* 174 Ill. 52.

Ample provision is made in the statutes of our State to compel a sale of real estate to pay debts, and these statutory provisions must be followed before a claimant can resort to real property which belonged to the deceased to satisfy his claim. (*Therens* v. *Therens,* 267 Ill. 592, 595.) A court of equity has no original jurisdiction to order the sale of real estate to pay debts, for that power is derived from legislative authority, and without it the power does not exist. (*Whitman* v. *Fisher,* 74 Ill. 147, 154.) Even where a petition was filed by the administrator to sell real estate to pay debts, we held in *Hobson* v. *Payne,* 45 Ill. 158, where it was alleged that $10,000 in claims had been allowed against the estate in the administration proceedings in Harrison county, Kentucky, that the circuit court of Warren county was without power to order a sale of Illinois real estate, for the reason that no claims had been filed and allowed in Illinois.

It follows from what we have said, that the appellants are correct in their contention that it was error for the chancellor to permit the appellees to marshal assets consisting of Illinois real estate alone, to pay claims presented and allowed only in the jurisdiction of the domiciliary administration. The appellees had their remedy, if at all, under the statute.

The appellees also contend that the testatrix specifically directed that her whole estate be converted into money, and that, regardless of where the claims were presented

and allowed, her funeral expenses and debts should be paid before the appellants could share in the proceeds of the real estate devised to them by the first clause of her will. By providing in the first clause of her will that her debts and funeral expenses were to be paid she merely stated what the law requires to be done. The expression in the will adds nothing to the law. The debts were not made a charge upon the lands devised in the first clause of the will to the appellants. *Bucher* v. *Bucher,* 86 Ill. 377, 381.

By the first clause of her will Sarah P. Livingston devised the real estate in question in equal shares to the two appellant corporations. The same situation existed in the first and second clauses of the will involved in the case of *Young* v. *Sinsabaugh,* 342 Ill. 82. In that case, as here, the testator then authorized and empowered his executors "to sell any or all" of his real estate left at his decease and authorized them to convey with the same force and effect as he might have done if living. It was contended that the testator had worked an equitable conversion of his real estate, but we held that the will contained no imperative direction to the executor to sell real estate. While he was given that power he was not obliged to exercise it, and there was no equitable conversion of the real estate into personalty. In the case before us the matter of a sale is left to the discretion of the executor. He was not obliged to sell, for the language of the clause is, "any or all of my real or personal estate," and no specific purpose for such sale is mentioned by the testatrix other than that the sale or sales be made for the best interest of her estate within the discretion of the executor. Equity will not interfere to enforce the exercise of a mere power of sale. The land was not devised to the executor but a power was given him to sell generally when he thought it proper, and no object for the sale is expressed. No direction is given as to the application of the proceeds, either in paying debts, expenses or for investment or otherwise. Equity will not

compel the exercise of a naked power of sale such as is given here. *Clinefelter* v. *Ayres,* 16 Ill. 329.

We have held that the first clause of this will did not make the debts and funeral expenses a charge upon the land. In this view of the will an equitable conversion would only result in a division of the proceeds of sale among the devisees if the trustee were appointed and directed to make the sale. The proceeds could, therefore, in no event be considered as personal property to be used for the payment of debts and claims of creditors whose claims were not filed and allowed in the administration in this State. The sole remedy creditors would have is that provided by the statute, and of this they have failed to avail themselves. Under the circumstances here, the appellant corporations had the right to, and did, elect to take the real estate, even if an equitable conversion had been intended by the testatrix. *Hoopeston Public Library* v. *Eaton,* 283 Ill. 449.

It should be pointed out that while the opposite result was reached in this same estate in the case of *Board of Foreign Missions* v. *Bryson,* 91 Mont. 584, 9 Pac. (2d) 159, the laws of Montana provide that administrators with the will annexed have the same authority over estates which executors named in a will would have, (3 Rev. Code of Montana 1921, sec. 10063,) and also authorize a sale of real estate to be made and the proceeds transmitted to the domiciliary administrator in order that distribution may be made. (Ibid. sec. 10329.) That decision has no application in view of the differences in the laws of the two States.

The chancellor erred in overruling the demurrer of the appellants to the intervening petition of the University of Southern California and in his construction of the will.

The decree is reversed and the cause is remanded to the circuit court of Peoria county, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*